GOOD *v.* MODERN GLOBE, INC.

1. CORPORATIONS—CONTRACTS—EMPLOYMENT OF FORMER PRESIDENT.
Five-year contract between corporation and its former president at a greatly reduced figure, entered into at time 4 directors purchased his stock but not as a part of such purchase, *held,* to have contemplated reasonable compensation and to have evidenced a desire on the part of the board of directors to make sure of his availability for consultation, his influence in procuring bank loans and government contracts, where necessary, and a guarantee that he would not himself, for the period of the contract, be in any competitive enterprise, hence, it was not a retirement contract, legal waste nor an abuse of discretion.

2. SAME—DISCRETION OF DIRECTORS—WASTE.
Courts are reluctant to interfere with the business judgment of corporate directors and do so only if there has been so clear an abuse of discretion as to amount to legal waste.

3. SAME—CONTRACT WITH FORMER PRESIDENT—FIDUCIARY DUTY OF DIRECTOR.
Contract whereby former president of defendant corporation was engaged for period of 5 years to be available for consultation with the company at all reasonable times, would not become employed by any manufacturer of products presently manufactured by defendant and would serve as chairman of the board if elected thereto, executed at time he disposed of his stock to 4 of the 8 directors *held,* not a breach of fiduciary responsibility on the part of any director.

---

REFERENCES FOR POINTS IN HEADNOTES
[1]  13 Am Jur, Corporations § 947 *et seq.*
[2]  13 Am Jur, Corporations § 961 *et seq.*
[3]  13 Am Jur, Corporations § 997 *et seq.*
[6]  35 Am Jur, Master and Servant §§ 87, 88, 99.
[7]  35 Am Jur, Master and Servant § 12.
[8]  13 Am Jur, Corporations § 752 *et seq.*
[10]  3 Am Jur, Appeal and Error § 778.
[11]  30 Am Jur, Interest § 29.

4. SAME—FAIRNESS OF CONTRACT—BURDEN OF PROOF.

Statutory burden of proving fairness of 5-year contract for services, entered into between directors of corporation and its former president at time he disposed of his stock to 4 of the 8 directors, *held,* to have been sustained in action by former president to recover amount corporation had agreed to pay him, hence, where he performed and tendered performance under the contract, he may not be deprived of the benefits to him following a subsequent change of stock ownership and management that had been apprized of his outstanding contract (CLS 1952, § 450.13, subd 5).

5. SAME—CONTRACT WITH FORMER PRESIDENT — STATUTES — RE-STRAINT OF EMPLOYMENT.

Contract whereby corporation employed its former president in a consultative capacity for period of 5 years following his disposition of his stock to 4 of the 8 directors, and which provided he was not to be employed by any manufacturer of products manufactured by the company for the duration of the employment, was a contract of employment and not a contract in restraint of employment (CL 1948, § 445.761).

6. MASTER AND SERVANT—CONTRACT NOT TO BE EMPLOYED BY A COMPETITOR.

Any employer may contract with his employee that the latter will not become employed by a competitor of the employer for the duration of the employment (CL 1948, § 445.761).

7. CORPORATIONS—CONTRACTS—CONSIDERATION.

Contract whereby plaintiff, a former president of defendant corporation, was employed in a consultative capacity for period of 5 years did not lack consideration either at its inception or in its execution, since by virtue of his long association with the company, he had valuable services to tender in exchange for the contract, which he made available to the company so long as he was requested and allowed to do so.

8. SAME—CONTRACT OF EMPLOYMENT OF FORMER PRESIDENT—ULTRA VIRES.

A contract with defendant corporation's former president whereby he was to be available in a consultative capacity for period of 5 years following disposal of his stock to 4 of the 8 directors was not *ultra vires* as to the board, where the contract as to his services was no part of the stock purchase transaction.

9. CONTRACTS—BREACH—DAMAGES.

Judgment of $15,000 for plaintiff under 5-year contract for

services during remaining 2-1/2-year period at $500 per month, without interest to date of judgment, based on fact that some payments were not then due and payable is not disturbed on appeal by defendant corporation which had terminated the contract.

10. Appeal and Error—Improper Matter in Brief—Motion to Strike.

The proper remedy of a party on appeal who claims the opposite party's brief contains improper matter is by way of a motion to strike the objectionable language from the brief (Court Rule No 58, § 2 [1945]).

11. Interest—Judgment—Breach of Contract.

Interest is allowed from date of circuit court judgment for damages for breach of contract upon affirmance thereof after expiration of period for which services were to be rendered by plaintiff.

Appeal from Kent; Sweet (Lucien F.), J., presiding. Submitted June 7, 1956. (Docket No. 34, Calendar No. 46,778.) Decided September 4, 1956.

Case by Grover C. Good against Modern Globe, Inc., a Michigan corporation, for damages on breach of contract calling for personal services. Judgment for plaintiff. Defendant appeals. Affirmed.

*Warner, Norcross & Judd* (*Harold S. Sawyer* and *Joseph B. White,* of counsel), for plaintiff.

*Cornelius Wiarda,* for defendant.

Edwards, J. Plaintiff and appellee, Grover C. Good, brought suit for the balance of moneys he claimed to be due under a written contract between himself and defendant and appellant, Modern Globe, Inc., a Michigan corporation, hereinafter referred to as Globe, said contract being dated May 1, 1951.

The pertinent portions of the contract in question, the execution of which is admitted by the parties, are as follows:

"(1) The company agrees to pay Mr. Good, in full payment for all services to be rendered hereunder, $500 per month, beginning on the date hereof and continuing until April 30, 1956.

"(2) Mr. Good hereby agrees for the above specified period, (a) to hold himself available for consultation with the company at all reasonable times, such consultations to be held at the principal office of the company in Grand Rapids, or at such other place as may be mutually agreed upon, (b) that he will not, without the prior written consent of the company, become employed, directly or indirectly, by any manufacturer of knitted goods or products presently manufactured by the company, and (c) to serve as chairman of the board of directors of the company if elected to such office."

It is conceded by the parties that the payments called for by this contract were made up to November 1, 1953, and that nothing was paid thereafter. On the trial of this matter in the circuit court for Kent county before Judge Lucien F. Sweet, without a jury, Judge Sweet found that defendant Globe had wrongfully terminated the contract and entered judgment in the amount of $15,000, plus costs, in favor of the plaintiff, this sum representing all moneys which would have been due plaintiff under the full execution of the contract.

This Court adopts the trial judge's statement of the relevant facts in this matter as follows:

"The employment of the plaintiff by the defendant corporation began in 1916 and continued in various capacities until November 1, 1953. The defendant corporation was at all times engaged in the manufacture of knitted products. Through the years the plaintiff advanced his position with the defendant corporation and at various times had served as director, secretary, treasurer, president and chairman of the board of the defendant corporation. For some years prior to May 1, 1951, plaintiff had

been the dominant figure in the management and operation of the business and affairs of the defendant corporation.

"For some period of time prior to May 1, 1951, the affairs of the corporation had not been going as smoothly as theretofore, due to several facts, and by May 1, 1951, the plaintiff had determined to liquidate his holdings in the corporation which consisted of stock held in his wife's name, and to retire from the active management thereof. To that end he discussed with some of the directors the sale of his stock, consisting of 7,000 shares, having a then market value of approximately $7 per share.

"The plaintiff first offered his stock for sale at $10 a share, but this offer was refused and he then offered it at the market value. Mr. Siegel W. Judd, acting on behalf of the 4 directors interested in acquiring the stock, made the plaintiff a flat offer of $50,000, which was accepted, and on May 1, 1951, the purchase was concluded.

"It was the feeling of the directors, not only those who were purchasing the plaintiff's stock, but the full board, consisting of 8 directors other than the plaintiff, that it would be detrimental to the interests of the defendant corporation if the plaintiff were to completely sever all connection with the corporation. Because of his long association with the corporation, the plaintiff had the confidence of its employees, its sales force and executives, and of the board of directors. He also had had close contact and good associations with the banks and bankers to whom the corporation regularly had to look for very sizable loans for inventory purposes. Two of the directors who participated in the purchase of the plaintiff's stock testified at the trial and stated that they would not have been interested in purchasing the stock at any price if the corporation was going to be denied the benefit of the plaintiff's long experience by a complete severance of all of his connections with the corporation. Consequently on the same day as the stock transaction a meeting of the board of directors

was held and it was decided to enter into the contract with the plaintiff, which is the basis of this action, and a copy of which is attached to the declaration, and the original of which was received in evidence as exhibit 3.   *   *   *   The $50,000 paid by the 4 directors purchasing the stock to the plaintiff was the consideration and the sole consideration passing to the plaintiff. The price so paid to him was a fair price, and approximated the market value of the stock at that time. Nor did the contract create or was it intended that it should create a pension for the plaintiff. By reason of his past experience and long association with the defendant corporation, plaintiff was in the position to render the services called for by the contract, exhibit 3, and the evidence presented indicated that the board of directors exercised sound judgment and were motivated entirely by the desire to do that which would benefit the defendant corporation in its future operations.   *   *   *

"After entering into the contract the plaintiff proceeded to render the services called for thereby. He maintained an office in the company's plant and was in regular attendance. He made a study of wages in the industry throughout the south and visited plants in the south. He held the office of chairman of the board and performed the duties thereof.

"During the summer of 1952 there were negotiations for the sale of the business to the Aetna Industrial Corporation, which culminated in August of 1952 when that corporation acquired 90% of the stock of the defendant corporation, and the Aetna Industrial Corporation, through its representatives, took over the active management of the defendant corporation. Plaintiff was requested and did resign as chairman of the board. Very little demand was made of him for any services although he remained at all times available and willing to perform his part of the contract.

"Prior to the consummation of the stock purchase by the Aetna people they had been fully informed as to the contract existing between the plaintiff and

the defendant corporation.  After taking over the management of the defendant corporation no complaint regarding the contract or the services of the plaintiff was made by the new management.  However, it appeared from the evidence presented at the trial that the new management was dissatisfied with the contract and was looking for some way in which any further liability thereunder might be avoided. Under date of October 26, 1953, the vice-president of the defendant corporation wrote to the plaintiff and on November 3, 1953, the plaintiff, through his attorney, replied to that letter.  These 2 letters are exhibits 6 and 7, produced at the trial, but are not presently in the possession of this court, and the quotations therefrom are taken from the briefs of counsel.

"The letter from the defendant corporation, exhibit 6, contained the following: 'We hope that you will share our belief that inasmuch as no further government business is contemplated, the purpose of the agreement herein referred to has been eliminatd, and the agreement *ipso facto* should be considered cancelled.  We believe that the effective date of cancellation should be November 1, 1953, but await your advice before putting this into effect.'

"The letter written by plaintiff's attorneys, exhibit 7, contains the following: 'You, of course, have the power, as opposed to the right, to cancel the contract of Mr. Good, and upon that premise Mr. Good is recognizing the contract as cancelled pursuant to your letter.  Mr. Good does not, however, in any manner release you from your obligations to him as a result of your breach of the contract and expects to hold you to account for his damages.'

"Thereafter no further payments were made under the provisions of the contract to the plaintiff and apparently there were no further contacts between the parties until the commencement of this suit."

Globe contends on appeal, (1) that the contract was a pension or retirement contract beyond the

power of the board of directors to make; (2) that the contract represented a breach of fiduciary relationship on the part of Good as director of Globe and, hence, was voidable; (3) that 4 of the 8 members of the board of directors who had bought Good's stock were financially interested in this contract and, hence, barred from voting thereon; (4) that the contract was in restraint of employment and void under the provisions of CL 1948, § 445.761 (Stat Ann § 28.61); and, finally, that consideration for the contract from Good failed, either wholly or in part, on the facts set out before.

Taking these issues in order, this Court believes that the record discloses that the contract contemplated reasonable compensation, at a greatly reduced figure, from Globe to its former president whose services admittedly had been of great value in the past. It appears that the board of directors desired to make sure of Good's availability for consultation, his influence in procuring bank loans and government contracts, where necessary, and a guarantee that he would not himself, for the period of the contract, be in any competitive enterprise. These objects are not consistent with appellant's theory of a retirement contract.

Appellant relies strongly upon *Beers* v. *New York Life Insurance Co.,* 66 Hun 75 (20 NYS 788). Aside from the many differences of fact between the instant case and the *Beers Case,* this Court is not persuaded that the *Beers Case,* handed down by a New York court in 1892, is any safe guide to present-day law in relation to corporate pension plans.

In *Fogelson* v. *American Woolen Co.* (CCA), 170 F2d 660, 662, the court said,

"Courts are properly reluctant to interfere with the business judgment of corporate directors; they

do so only if there has been so clear an abuse of discretion as to amount to legal waste."

See, also, *Bookman* v. *R. J. Reynolds Tobacco Co.*, 138 NJ Eq 312 (48 A2d 646); *Holmes* v. *Republic Steel Corporation,* (1946, Ohio CP) 69 NE2d 396; O'Neal, Stockholder Attacks On Corporate Pension Systems, 2 Vand L Rev 351.

We hold that the execution of this contract represented neither waste nor abuse of discretion.

The trial court held that there was no breach of fiduciary responsibilities established in the testimony on the part of any director. The ingenious theory set forth by appellant in his pleadings to the general effect that 4 members of the board of directors of the then Globe purchased Good's stock in the company at a reduced price in exchange for their using their powers as members of the board to give him the benefit of the subject contract is not supported by a line of direct evidence any place in this long record.

This contract doubtless seemed to Good and the directors of Globe at the time it was made as a straightforward desirable business arrangement from the point of view of both parties. The trial court obviously found that plaintiff had borne the statutory burden of proving its fairness. CLS 1952, § 450.13, subd 5 (Stat Ann 1955 Cum Supp § 21.13, subd 5). Good, having performed and tendered performance continually under the contract, may not be deprived of the benefits provided therein for him by a subsequent change of stock ownership and management, particularly since the new purchasers were fully aware of the contract in question prior to their purchase. There being no breach of fiduciary relationship established on the part of either Good or the 4 members of the board of direc-

tors who bought his stock, the contract cannot be held void or voidable on that ground.

Appellant argues that the contract was in restraint of employment and void under the provisions of CL 1948, § 445.761 (Stat Ann § 28.61). The statute in question reads as follows:

"All agreements and contracts by which any person, copartnership or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

The plain language of this contract indicates that it is a contract of employment, not a contract whereby Good undertook not to engage in employment. A provision therein which forbade Good to become employed by any knitting goods manufacturer of products competitive to Globe's, is a provision which any employer would certainly have a right to contract for from any employee for the duration of his employment. The contract in question is not void under CL 1948, § 445.761 (Stat Ann § 28.61).

Finally, the facts recited above do not indicate that consideration for this contract was lacking from Good either at its inception or in its execution. On the contrary the facts indicate that Good had valuable services to tender in exchange for the contract in question and that he made them available to Globe so long as he was requested and allowed to do so.

This Court holds that the record sustains the findings of the trial court in holding, either expressly or by implication, that plaintiff sustained the burden of proof, (1) that the contract in question was fair to the corporation and its stockholders; (2) that it had been approved by an uninterested majority of

the board of directors; (3) that it was not a pension or retirement contract; (4) that it was not *ultra vires* as to said board, and; (5) that the contract was an employment contract with plaintiff for which valuable consideration was recited and performed while plaintiff was permitted so to do.

The circuit judge in entering judgment for $15,000 in favor of the plaintiff did not allow interest on the theory that as of the date of his decree some of the moneys were not yet payable and that the sums already due fairly balanced those not yet due.

At oral argument counsel for the appellant made vigorous objection to various portions of appellee's brief, urging upon the Court that references to present controlling interests as "this group of liquidators who briefly stayed in our city and then departed when the skeleton was clean of meat" (appellee brief, pp 14, 15) represented an improper attempt to present to the Court facts not included in the record or available to the court below. A careful review of the record gives substance to this charge, and no consideration has been given in this opinion to any such fact or argument. Defendant and appellant's proper remedy for this situation should, however, have been a timely motion to strike the objectionable language from plaintiff and appellee's brief under Court Rule No 58, § 2 (1945).

The judgment is hereby affirmed, with interest from the date of the circuit court judgment, with costs to the appellee.

Dethmers, C. J., and Sharpe, Smith, Boyles,. Kelly, Carr, and Black, JJ., concurred.