390 So.2d 134 (1980)
ORTHOPEDIC EQUIPMENT COMPANY and Frank I. Saemann, Appellants,
v.
STREETMAN AND ASSOCIATES, INC., a Florida Corporation, and Fred W. Streetman, Jr., Appellees.
STREETMAN AND ASSOCIATES, INC., and Fred W. Streetman, Jr., Appellants,
v.
ORTHOPEDIC EQUIPMENT COMPANY, Etc. et al., Appellees.
Nos. 78-930/T4-99, 79-440/T4-99A.
District Court of Appeal of Florida, Fifth District.
November 12, 1980.
*135 James F. Page, Jr. of Gray, Adams, Harris & Robinson, P.A., Orlando, for appellants/cross-appellees.
Ronald L. Harropp, Orlando and Arthur A. May, South Bend, Ind., for appellees/cross-appellants.
PER CURIAM.
The appellant, Orthopedic Equipment Company (hereinafter referred to as OEC), an orthopedic supplier, in 1969 granted the appellees (hereinafter referred to as Streetman) an exclusive distributorship for its products in Florida and other areas. In return, Streetman agreed not to sell or promote medical or hospital merchandise, other than that bought from OEC, in the defined geographical area during the pendency of the agreement. The agreement, paragraph 15, contained a "best efforts" clause as follows:
BEST EFFORTS: During the term of this Agreement and any renewal period, DISTRIBUTOR shall exert his best efforts to sell and promote COMPANY'S products. At no time shall DISTRIBUTOR sell or promote, directly or indirectly, any items of merchandise normally sold in the medical and hospital field which are not invoiced by the COMPANY. It is understood that DISTRIBUTOR'S primary obligation is to sell and promote COMPANY products but nothing contained herein, however, is intended to prohibit DISTRIBUTOR, as an independent *136 contractor, from engaging in fields of endeavor other than the sales of products normally sold in the hospital and medical fields.
The first question presented here is whether or not the above paragraph constitutes an illegal restraint of trade. The trial court apparently found that it did and modified the restrictions permitting Streetman to sell and promote hospital and medical merchandise of types not invoiced by OEC.
Both parties appeal this ruling: OEC contends the trial court should not have modified the "in-term" contractual restriction; Streetman argues that so long as it meets minimal quota standards prescribed by other provisions of the agreement, it should be allowed to sell any and all items in the hospital and medical field whether invoiced by OEC or not, and the trial court should have stricken the limitations of Paragraph 15 in toto as a restraint of trade.
We agree with OEC. At common law a contract in restraint of trade which deprived the public of one's skill or industry and which prevented one from supporting himself and his family was invalid as against public policy. Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 68, 22 L.Ed. 315, 318 (1874). Since the restraint in this contract coincides with the term of employment it does not create the evils which made a post-term restraint invalid at common law.
This common law doctrine existed in Florida until it was modified by section 542.12, Florida Statutes (1955). The purpose of this statutory change was not to expand the common law doctrine to cover in-term restraints such as found in this contract but rather limit its sometimes harsh results to the employer by making certain exceptions to its application. Flammer v. Patton, 245 So.2d 854 (Fla. 1971). We hold, therefore, that section 542.12 has no application to in-term restraints, restraints existing for the duration of the term of employment.
Although this is a decision of first impression in this state, we do find support in other jurisdictions which have considered in-term restraints. See Harrison v. Glucose Sugar Refining Co., 116 F. 304 (7th Cir.1902); Good v. Modern Globe, 346 Mich. 602, 78 N.W.2d 199 (1956); Vendo Co. v. Stoner, 105 Ill. App.2d 261, 245 N.E.2d 263 (1969); 54 Am.Jur.2d Monopolies, etc. § 452 (1971); and Annot., 9 A.L.R. 1456, § IIa at 1463 (1920).
Streetman also contends that paragraph 15 violates the Federal Trade Commission Act, 15 U.S.C. section 45(a)(1), and the Florida Deceptive and Unfair Trade Practices Act, section 501.204, Florida Statutes (1979). This argument is without merit. See Federal Trade Comm'n. v. Curtis Publishing Co., 260 U.S. 568, 43 S.Ct. 210, 67 L.Ed. 408 (1923).
In light of the above we find paragraph 15 of the agreement to be valid, its terms clear and unambiguous and, therefore, the trial court's modification thereof was error.
Streetman also appeals the finding of the trial court that OEC is not required under the contract to provide Streetman with cost information on new products. OEC contends that there is no express or implied requirement in the contract that OEC furnish cost information to Streetman; therefore, the trial judge was correct in his conclusion. Streetman argues that the contract taken as a whole and the conduct of the parties indicate that he is entitled to such information.
The contract in dispute contains the following provisions:
6. INSPECTION OF RECORDS: Each party hereto and/or their accountants may, upon reasonable notice and during normal business hours, inspect each other's books and records pertaining to the operation contemplated by this Agreement.

7. AMOUNT OF COMMISSIONS: Commissions shall be paid by the COMPANY to the DISTRIBUTOR, in accordance with Exhibit `A' as aforesaid, but subject to the following:
(a) In the event new items of merchandise are added, COMPANY and DISTRIBUTOR *137 shall agree upon the rate of commission to be paid to DISTRIBUTOR prior to marketing of said new product.
According to paragraph 7(a), Streetman and OEC are required to negotiate and agree upon a rate of commission for new products. The determination and payment of commissions obviously are integral parts of the "operation contemplated by this Agreement." Construing the contract as a whole, it would appear that Streetman has the right to inspect the cost information contained within OEC's books and records.
The conduct of the parties supports this conclusion. From 1969 until 1973, no cost or pricing information was requested nor supplied by OEC. However, in 1973, OEC added to its line a "universal abdominal binder" which carried a reduced commission. Streetman requested certain cost information. OEC agreed to provide the requested information. Thereafter, following requests from Streetman, OEC provided cost and pricing information on certain items from 1973 until 1976.
Paragraphs 6 and 7, taken in light of the conduct of the parties, indicate that the parties intended that Streetman be allowed to inspect OEC's books and records pertaining to cost information of new products upon reasonable notice and during normal business hours; however, OEC is under no contractual duty to furnish Streetman with such information. Therefore, the partial final judgment should be modified to establish Streetman's right of inspection only in regard to such information.
Streetman's contention that the trial court erred in not construing the contract concerning his right to run for congress is likewise without merit. The court properly found such issue not within the scope of the pleadings.
In consolidated Case No. 79-440, Streetman appeals the determination by the trial court that its damage claims set forth in Counts III and IV of its complaint are barred by the applicable statute of limitations. We find this appeal to be without merit and affirm the trial judge in this regard.
AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion.
COBB and FRANK D. UPCHURCH, Jr., JJ., concur.
MILLER, ROBERT P., Associate Judge, concurs in part and dissents in part with opinion.
MILLER, ROBERT P., Associate Judge, concurring in part and dissenting in part.
I concur and agree completely with the majority opinion in all respects except their interpretation of Paragraph 6 of the contract. Paragraph 6 obviously refers to books of account and other sales records involved in the distribution of OEC's products and should be so limited. I would affirm the trial judge in that regard.