John C. STEGEMAN and Lois U. Stegeman, his wife, Plaintiffs,

v.

DETROIT MORTGAGE AND REALTY CO., Earl I. Heenan, Aetna Life Insurance Company, W. Eugene Ross, W. O. Bailey, J. H. Filer, D. G. Conrad, C. R. Vance, W. G. Johnson, Warren G. Elliott, John Walsh, Clayton Bratthan, Irving August, and Patrick J. Conlin, Defendants.

Civ. A. No. 82–60059.

United States District Court,
E. D. Michigan, S. D.

June 28, 1982.

As Corrected on Denial of Rehearing
Sept. 2, 1982.

Robert A. Vieweg, Bloomfield Hills, Mich., for plaintiffs.

Eugene Driker, Detroit, Mich., Eliot G. Striar, Ann Arbor, Mich., Irving August, Birmingham, Mich., W. Merritt Jones, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Before the court are motions to dismiss or for summary judgment brought by defendants Detroit Mortgage & Realty Co. (DM&R) and its officers, Earl I. Heenan, Jr. and Clayton Braathan; Aetna Life Insurance Company (Aetna) and its officers, W. Eugene Ross, W. O. Bailey, J. H. Filer, D. G. Conrad, C. R. Vance, W. G. Johnson, Warren G. Elliot, and John Walsh; and Patrick J. Conlin, Circuit Court Judge in the Washtenaw County Circuit Court. Unless otherwise indicated, when the court refers to one of the corporate defendants it will also be referring to its individual officers and agents, as noted above, but will not mention the individuals by name. In addition to the motions filed by defendants, plaintiffs have filed a motion to amend in the event the court is inclined to grant the defendants' motions.

In addition to the motions to dismiss, defendants DM&R and Aetna also seek sanctions against plaintiffs. They have moved for costs and attorney fees expended to defend this lawsuit; research, draft, and file their motions and briefs, and; appear at oral argument. Moreover, both defendants ask the court to issue an injunction against plaintiffs, enjoining them from filing any further lawsuits which grow out of the same facts and circumstances which underlie this lawsuit.

Oral argument on DM&R's motion was held on May 11, 1982. On May 10, 1982, Aetna filed a motion which was very similar to DM&R's, and which raised similar arguments. Since Aetna's motion had not been filed sufficiently in advance to permit plaintiffs to respond and since the motion relied upon two unsigned affidavits, the court did not deem Aetna's motion appropriately before it on the date of oral argument. At the oral argument the court advised plaintiffs' counsel that it would deem Aetna's motion fully submitted once signed affidavits were received and once plaintiffs had been given a reasonable time to re-

spond. In addition, plaintiffs were advised that they could submit a separate response to Aetna's motion or rest on their response to DM&R's motion. The plaintiffs were advised further that absent a request to the court to the contrary, the court would deem Aetna's motion fully submitted and ripe for decision after receipt of Aetna's signed affidavits, and would rule on the motion without further response from plaintiffs and without further oral argument.

Additionally, at the May 11, 1982 oral argument, counsel for defendant Patrick J. Conlin sought to make an oral motion on behalf of his client to dismiss or for summary judgment. When permission to do so was denied by the court, counsel advised the court and plaintiffs of his intention to promptly file a motion to dismiss or for summary judgment. Plaintiffs were advised by the court that defendant Conlin's motion would be deemed fully submitted and ripe for decision within a reasonable time after filing, and that absent a prompt answer or request for oral argument by plaintiffs the motion would be decided based upon the motion and brief before the court, without oral argument. Defendant Conlin's motion to dismiss or for summary judgment was filed on May 13, 1982.

On June 4, 1982 plaintiffs answered defendant Conlin's motion; however, they failed to file anything further with respect to Aetna's motions and they did not request oral argument on either motion. Accordingly, the court finds that all presently pending motions are fully submitted and ripe for decision. Pursuant to local Rule 17(j) and in accordance with the comments noted above, the court will rule upon the motions brought by defendants Aetna and Conlin without oral argument.

Since a full understanding of the facts in this case, the relationships between the parties, and the history of past litigation between these parties is crucial to an understanding of the court's ruling, they will be set out below in some detail.

## I. FACTS

This case came to the court upon removal from the Oakland County Circuit Court. The removal petition was filed on February 18, 1982. While the lawsuit was first filed in Oakland County on July 23, 1981, apparently the defendants were not served with process until January 19, 1982.

Plaintiffs are John C. Stegeman and Lois U. Stegeman, husband and wife. Their first amended complaint alleges that defendants conspired to violate their civil rights in violation of 42 U.S.C. § 1985. In addition to the thirteen defendants noted above who have brought motions to dismiss or for summary judgment, Irving August is also a defendant. The allegations are that the defendants conspired to deprive plaintiffs of certain parcels of developed real property located in Ann Arbor, Michigan.

John C. Stegeman alleges that he succeeded to claims held by three corporations: the 1700 Geddes Corporation; the Bell Tower Inn, Inc.; and the Campus Inn, Inc. Plaintiffs claim that these three corporations pledged certain properties as collateral to Aetna and DM&R for a long term permanent mortgage commitment running from Aetna to DM&R (but allegedly paid for by the three predecessor corporations) and for interim construction loans to finance the construction of a new hotel (the Campus Inn) in Ann Arbor, Michigan. The crux of the complaint is that in December, 1969 the corporate defendants allegedly concealed from plaintiffs the fact that the long term permanent mortgage commitment had been extended by defendants beyond its schedule termination date. Plaintiffs contend that defendants' concealment concerning the continued existence of long term financing caused plaintiffs to suffer the loss of their properties. DM&R and Aetna ultimately obtained judgments of foreclosure against the properties. The assertion is that the defendants' acts in concealing the extension of the permanent long term mortgage commitment also served defendants' true motive which was to permit foreclosure on plaintiffs' properties. Plaintiffs further assert that the illegal foreclosures also led to illegal deficiency judgments being taken against them in favor of DM&R.

Among other things, plaintiffs allege that the defendants commenced foreclosure actions while the permanent mortgage commitment was still in effect; that the defendants entered judgments of foreclosure while the commitment was still in effect; that the defendants gave false testimony and affidavits in connection with the foreclosure proceedings; that the defendants submitted altered documents. Judge Patrick J. Conlin is alleged to have improperly entered a deficiency judgment on behalf of DM&R on "July 23 or 24, 1975", without plaintiffs having been provided personal notice of such action and without calling the case for a hearing in open court. Additionally, Irving August is alleged to have improperly undertaken plaintiff's representation in 1979 while he had simultaneous dealings with defendants DM&R and Aetna; it is alleged that August became part of the conspiracy by permitting DM&R and Aetna to exert improper pressure upon him to plaintiffs' detriment.

## II. PRIOR LITIGATION BETWEEN THE PARTIES

On March 30, 1971 DM&R commenced three foreclosure actions in Washtenaw County Circuit Court against the properties plaintiffs allege were wrongfully taken from them. The three actions were consolidated for trial. On May 20, 1971 Aetna began a similar action in federal court. In both forums the Stegemans asserted counterclaims alleging a conspiracy and facts and claims substantially similar to the ones they raise here in their complaint. The counterclaims in each forum failed and the courts entered judgments of foreclosure in favor of DM&R and Aetna.

Aetna's judgment in its federal court foreclosure action was entered in May, 1973. A sale was held after judgment. The federal foreclosure action was never appealed.

After the state trial on DM&R's claims, judgments of foreclosure were entered in January, 1973. In February, 1973 the Stegemans' motion for a new trial or in the alternative to amend the judgments of mortgage foreclosure was denied. These judgments were appealed unsuccessfully by the Stegemans to the Michigan Court of Appeals and the Michigan Supreme Court. The court of appeals conducted a full de novo review of the record, brief, and transcript before rejecting the Stegeman's appeal and affirming the trial judge. In February, 1974, the court of appeals did, however, order a second foreclosure sale, the first one having been conducted in March, 1973. In July, 1974 the Michigan Supreme Court denied leave to appeal.

With all appeals exhausted, the properties subject to DM&R's foreclosure judgments were sold at sheriff's sales in September, 1974. Confirmations of the sheriff's sales were entered in July, 1975, and at that time a sizeable deficiency judgment was entered. In October, 1975 the trial court denied the Stegemans' motion to set aside the orders confirming the sheriff's sales. In February, 1978 the Stegemans filed a motion for a new trial in connection with the Washtenaw County foreclosure proceedings. This motion was denied in February, 1979. In March, 1979 the Stegemans' motion for rehearing on the denial was denied. A motion for leave to appeal was denied in December, 1979. A motion in the trial court was filed, this time seeking relief from the deficiency judgments. This motion was denied in June, 1980 and was not appealed.

In May, 1976 the Stegemans commenced a federal antitrust action against DM&R and Aetna. The complaint raised the same allegations of conspiracy that were alleged in the state and federal foreclosure proceedings. After the completion of full discovery extending over several years the action was dismissed in March, 1980 when the court granted defendants' motions for summary judgment. The Stegemans appealed this judgment, and the trial judgment was affirmed by the United States Court of Appeals for the Sixth Circuit on January 5, 1982.

On July 5, 1979 John C. Stegeman filed a Chapter XI proceeding for Bankruptcy. In August, 1979 he filed a motion for relief from the deficiency judgments held by

DM&R. At about the same time Mr. Stegeman filed another action in Wayne County Circuit Court, asserting the same allegations as he raised in his objections to DM&R's claim in the bankruptcy proceeding. The Wayne County action was transferred to the bankruptcy court and consolidated with the Chapter XI action. Stegeman's claims in the bankruptcy court concerning the inappropriateness of the deficiency judgment raised the same allegations of conspiracy, misrepresentation, and fraud as had been raised in each of the earlier state and federal proceedings.

In a November 21, 1980 opinion the bankruptcy judge denied Stegeman's objections to DM&R's claim for its deficiency judgment. In a substantive, carefully analyzed opinion, the judge held that the doctrine of res judicata barred Stegeman's relitigation of the issues underlying his objections. Ultimately, in two December 24, 1980 orders, the bankruptcy judge dismissed Stegeman's objections to DM&R's claims and dismissed the complaint which had been filed in Wayne County Circuit Court and removed to bankruptcy court.

Stegeman then appealed the bankruptcy judge's opinion and dismissal. On October 6, 1981 a United States district judge, sitting as the first level reviewing court, affirmed the bankruptcy judge. The reviewing judge concurred with the bankruptcy judge's finding that Stegeman's arguments raised in the bankruptcy proceeding were time barred. In addition, the reviewing judge found that the appeal of the bankruptcy judge was taken in bad faith and that John Stegeman acted with obdurate obstinancy in taking the appeal. Therefore, on December 16, 1981, DM&R was awarded attorneys' fees of $8,424.00 which it incurred as a result of the appeal. In the same order the appellate judge denied a motion for reconsideration of his October 6, 1981 order.

These rulings by the appellate judge have been appealed to the United Court of Appeals for the Sixth Circuit. No opinion on the appeal has yet been rendered.

As noted at the outset, on July 23, 1981, the Stegemans filed the present § 1985 action in Oakland County Circuit Court. However, service was not made on the defendants until January 19, 1982, after Judge Pratt had refused to reconsider or alter his earlier affirmance of the bankruptcy judge's dismissal of Stegeman's claims.

### III. MOTIONS TO DISMISS OR FOR SUMMARY JUDGMENT BY DM&R AND AETNA

Since both defendants' motions are similar and raise similar legal arguments, unless otherwise indicated the court will treat them as one motion in its analysis and conclusions.

Defendants' motion asserts four arguments. First, defendants assert that plaintiffs' claim brought under 42 U.S.C. § 1985 has no applicability to the facts as pleaded in the complaint. Plaintiffs' complaint pleads a conspiracy to deprive them of due process of law and raises no allegation of racial or class-based discrimination. Defendants contend that plaintiffs' complaint fails to state a claim under § 1985 upon which relief can be granted.

Second, defendants urge that plaintiffs' claims are barred by the statute of limitations. Applying the analogous Michigan statute of limitations provision, M.C.L.A. § 600.5805(8), defendants state that a three year statute applies. The present action was not filed until July 23, 1981, and defendants were not served with process until January, 1982. Aetna's judgment of foreclosure was entered in 1973 with no appeal filed. Judgments in favor of DM&R were entered in 1973 and affirmed on appeal after a de novo review in 1974. The sheriff's sales took place in 1974 and the deficiency judgment was entered in July 6, 1975. Therefore, defendants argue that the three year statute of limitations has run.

Third, defendants contend that plaintiffs' claims are barred by the doctrine of res judicata.

Fourth, defendants assert that John Stegeman has no standing to bring this action because he is a debtor in bankruptcy,

a receiver has been appointed by the bankruptcy court to administer the bankruptcy estate, and the receiver and not Stegeman is the only proper party to bring this lawsuit.

The court has carefully evaluated the motions and briefs before it. Additionally, the court entertained extensive oral argument on DM&R's motion. As noted at the outset, Aetna's motion and brief raise substantially similar legal arguments as DM&R's motion. The court does not feel that it is necessary to analyze extensively each of the arguments raised by the defendants in support of their motion to dismiss or for summary judgment. The law is abundantly clear on each issue and leaves little room for dispute or disagreement.

### A. Section 1985

█ It is clear from plaintiffs' complaint that they are seeking redress for perceived deprivations of property without due process of law at the hands of DM&R and Aetna. It is equally clear from even a cursory review of the cases that have construed § 1985, the only section under which plaintiffs seek relief, that this section does not proscribe the conduct complained of by plaintiffs.

The statute is directed at deprivations of equal protection or equal privileges and immunities. Plaintiffs failed to assert any type of equal protection violation and failed to allege that there was some racial or other class-based discriminatory animus behind the defendants' allegedly conspiratorial actions. Plaintiffs also failed to allege that they are members of a protected class. It is axiomatic that without these allegations there can not be a cause of action under any of the potentially relevant subsections of § 1985. *See Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Browder v. Tipton*, 630 F.2d 1149 (6th Cir. 1980); *Kimble v. D. J. McDuffy, Inc.*, 623 F.2d 1060 (5th Cir. 1980); *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980); *Smith v. Martin*, 542 F.2d 688 (6th Cir. 1976); *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140 (6th Cir. 1973).

Accordingly, defendants' motions to dismiss based on this theory must be granted.

### B. Statute of Limitations

As noted above, plaintiffs did not file their action until July, 1981, and did not serve defendants until January, 1982. Aetna's foreclosure action began in 1971 and resulted in an unappealed judgment in 1973. DM&R's foreclosure actions were commenced in 1971, were tried in 1972, and resulted in judgments of foreclosure in 1973. Plaintiffs appealed unsuccessfully in 1974 after a de novo review by the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal in 1974. Judicial sales took place in 1974 and deficiency judgments were entered in July, 1975. Therefore, all aspects of the foreclosure proceedings and deficiency judgments of which plaintiffs now complain occurred no later than July, 1975. Accordingly, July, 1975 is the accrual date for plaintiffs' cause of action.

█ As defendants correctly indicate, this court is compelled to apply the most analogous state statute of limitations to plaintiff's civil rights claim. M.C.L.A. § 600.5805(8) provides the applicable standard and establishes a three year statute of limitations. Accordingly, in view of the facts recited above, plaintiffs are barred by the statute of limitations from proceeding with this claim. Plaintiffs' transparent attempt to toll the statute of limitations by naming their bankruptcy lawyer as a participant in the alleged conspiracy is unavailing. Plaintiffs' injuries accrued in July, 1975, almost four years before defendant August commenced his representation of John Stegeman in 1979 in his bankruptcy proceeding.

### C. Doctrine of Res Judicata

█ As has been clearly indicated in the opinions of the various judges who have had to pass on plaintiffs' earlier identical claims (claims which have been cloaked under the transparent guise of various legal theories),

all of the claims, assertions, allegations, and bases for recovery proffered now by plaintiffs to this court have already been fully, fairly, and convincingly decided by one or more other courts with competent jurisdiction. All claims raised here were either raised before and decided by other courts or could have been so raised.

The court need not repeat the litany of courts before which plaintiffs have sought to raise the same allegations of defendants' wrongdoing. The doctrine of res judicata is designed to prevent exactly the type of relitigation in which plaintiffs here seek to engage. Accordingly, defendants prevail on this issue. *See Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

### D. John Stegeman's Standing

■ Defendants correctly note that John Stegeman is without standing to bring this lawsuit. By order of the bankruptcy court on July 28, 1979, a receiver was appointed in the bankruptcy proceedings. By operation of that order, the receiver became the real party in interest to the present litigation on Mr. Stegeman's behalf. Section 110 of Title 11, the relevant provision of the Bankruptcy Act under which plaintiff's bankruptcy case was filed, provides that upon appointment and qualification the trustee becomes the real party in interest in substantially all claims of the debtor as of the date the bankruptcy petition is filed.

There is nothing in the record to indicate that Mr. Stegeman either sought or obtained the receiver's authorization to prosecute this claim. In their brief in opposition and at oral argument plaintiffs' counsel indicated that this matter had been discussed with the receiver and that the receiver made no objection to this lawsuit. Counsel advised the court that he would supplement the record with the receiver's authorization. The record has not been supplemented.

The court finds defendants' argument on this point persuasive and finds that they prevail on this issue. *See Dallas Cabana, Inc. v. Hyatt Corp.*, 441 F.2d 865 (5th Cir. 1971). For the reasons noted earlier in this opinion, plaintiffs' claims against these defendants must be dismissed. Accordingly, even if plaintiff remedied the problem of standing presented by this argument of defendants the case could not be resurrected.

Because of the court's rulings on the four foregoing legal theories of defendants, the court need not pass judgment on Aetna's first legal argument concerning plaintiffs' failure to timely and properly serve process.

### IV. PLAINTIFFS' MOTION TO AMEND

■ In their response to DM&R's motion to dismiss or for summary judgment plaintiffs alternatively sought leave to file an amended complaint to state a cause of action under 42 U.S.C. § 1983. Apparently recognizing the problem with establishing the state action component of a § 1983 claim, plaintiffs contended that Judge Conlin's entry of the deficiency judgments in "a highly improper fashion" served to bring the actions of the private parties within the reach of § 1983.

It is clear from even a cursory inquiry into plaintiffs' allegations that they can not reconstruct their present complaint to plead a § 1983 claim. Furthermore, the court's rulings on the statute of limitations, doctrine of res judicata, and issue of standing would have the same fatal impact on a § 1983 claim as they have had on plaintiffs' § 1985 claim. Only the problem of John Stegeman's standing is remediable by plaintiff; the other dispositive rulings would not be altered in the slightest by plaintiffs amending their complaint to allege a § 1983 violation. Therefore, plaintiffs' motion to amend is denied.

### V. PATRICK CONLIN'S MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

■ Patrick J. Conlin was the judge who signed the opinion and entered judgments of foreclosure on DM&R's claims against the plaintiffs. The opinion was dated January 4, 1973. The plaintiffs appealed Judge Conlin's ruling and after a de novo review

the Michigan Court of Appeals affirmed his ruling. The Michigan Supreme Court denied leave to appeal.

Defendant Conlin asserts one additional argument beyond those raised by the other defendants. He claims that judges are immune from liability for their judicial acts even when such acts are alleged to be in excess of their jurisdiction or to have been done maliciously or corruptly. This principle espoused by defendant Conlin is so basic to American jurisprudence as to be without serious challenge. Even the case cited by plaintiffs in support of their motion for leave to file an amended complaint asserting a § 1983 claim recognized this principle to be inviolate. *See Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). The court has carefully evaluated plaintiffs' answer to defendant Conlin's motion and finds no merit to the arguments they raised.

Accordingly, the court grants defendant Conlin's motion to dismiss for the reasons noted in its grant of the other defendants' motions and for the additional reason of his judicial immunity with respect to plaintiffs' claims against him in this case.

## VI. REMAINING DEFENDANT

■ As a result of the court's rulings recited above, all defendants except Irving August have been dismissed. No motion to dismiss or for summary judgment has been filed on Mr. August's behalf. However, the court finds that each of the above noted bases for dismissing plaintiff's complaint against the other defendants applies with equal force to defendant August. The court's analysis of plaintiffs' failure to properly plead a § 1985 claim obviously applies to their claims against defendant August and requires his dismissal. In addition, the statute of limitations bars plaintiffs' claims because the court finds that their cause of action accrued in July, 1975. The acts complained of by plaintiffs concern defendants' alleged deception and conspiracy to obtain plaintiffs' properties unlawfully. As noted earlier in the court's opinion, the applicable statute of limitations is three years. Application of this statute of limitations to defendant August requires his dismissal. Moreover, the doctrine of res judicata applies with equal force to bar plaintiffs' claims against defendant August. The plaintiffs' claim alleging an underlying conspiracy to defraud them of their property has been heard and rejected by the other courts. Plaintiffs are foreclosed from relitigating this claim. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981) and *Montana v. U. S.*, 440 U.S. 147, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Finally, the court's finding relative to John Stegeman's lack of standing to present the claims enumerated in his complaint applies to his claims against Irving August.

In view of the court's above noted rulings and because its analysis of the dispositive issues raised by defendants DM&R and Aetna is equally applicable to plaintiffs' claim against Mr. August, the court dismisses, sua sponte, defendant August from the lawsuit.

## VII. MOTIONS FOR SANCTIONS

Defendants DM&R and Aetna have moved the court for imposition of attorney's fees against plaintiffs and for issuance of an injunction prohibiting plaintiffs from instituting any further litigation which grows out of the core of operative facts presently before this court.

### A. MOTIONS FOR ATTORNEY'S FEES

The court has attempted to carefully chronicle and highlight the repetitive, incessant litigation plaintiffs have instituted against defendants DM&R and Aetna. Each new venture by plaintiffs into litigation in a different forum churned up the same facts, accusations, and allegations as had been decided adversely to them by prior courts. In each instance defendants were called upon to expend money, time, and energy defending themselves in lawsuits that no reasonable person would have filed. Certainly no reasonable person would have filed this lawsuit given the results of the past litigation between the parties on the same issues.

■ There are two bases for the court's authority to award attorney's fees in this case. The first basis rests on the court's inherent equitable authority to award costs and expenses, including actual attorney's fees, to a successful party "where an unfounded action or defense is brought or maintained in bad faith, vexatiously, wantonly, or for oppressive reasons." 6 J. Moore, Federal Practice ¶ 54.77.

The court finds that plaintiffs' actions in filing and prosecuting the present lawsuit represent the rare instance of bad faith, vexatiousness, and wantonness sufficient to justify an award of attorney's fees in favor of defendants DM&R and Aetna. There is no basis in law for plaintiffs' having had even a glimmer of hope that their complaint would withstand a motion to dismiss or for summary judgment. The history of parties' past litigation and the results reached by the prior courts coupled with the enunciated reasons for those courts' decisions served plaintiffs with ample notice that the present action was insupportable. On its face, plaintiffs' complaint fails to make out even a colorable claim under § 1985, and § 1985 is the only basis upon which the lawsuit was filed.

The court finds that plaintiffs' filing of this lawsuit amounted to bad faith and an effort to economically injure and publicly embarrass defendants. Their actions were vexatious and wanton. Plaintiffs' complaint apparently was motivated by some irrational thought that in spite of all the earlier courts' rejections of their claims (even after full discovery or full trials had been had), they might get lucky and recover all of their prior losses. Defendants should not have to bear the costs and expenses of defending against such bad faith litigation and "high stakes" gambling by plaintiffs to vindicate a perceived wrong which innumerable prior courts have "failed" to right. Plaintiffs' record of filing repeated lawsuits to recover for the same injury—lawsuits filed in the face of uniform rejections by the courts that have heard their cases—amounts to gross bad faith and an abuse of both the defendants and the judicial system.

These same findings support the other basis for the court awarding attorney's fees to defendants. Section 1988 of Title 42 in relevant part provides:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92–318, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

■ Since plaintiffs' complaint alleges a violation of § 1985 and since this court's rulings announced above make defendants the prevailing parties, the provisions of § 1988 apply. Accordingly, for the same reasons as enunciated in the findings of the court outlined above, the court finds that this is an appropriate instance to exercise its discretion under § 1988. The court awards defendants DM&R and Aetna reasonable attorney's fees as part of their costs of this action.

Based on the foregoing rulings, defendants DM&R and Aetna are directed to submit to plaintiffs and to the court a detailed record of their actual costs and attorney's fees incurred in defending this action and bringing their motions. This record is to reflect the hours worked, the nature of the work, the status of the person doing the work, and the usual billable rate for such work. Any other costs are to be fully documented as well. The plaintiffs will then be given a reasonable time to respond to defendants' claims for fees. Any objections by plaintiffs are to be directed to the limited issue of the fees and costs sought by defendants; plaintiffs are not to object to the fact of this court's grant of such fees.

If the parties can not agree on a figure for attorney's fees, then the defendants are to request a hearing date from the court and the issue as to amount only will be heard and decided by the court.

The court's award of attorney's fees in favor of defendants is to run against John C. Stegeman and Lois U. Stegeman, jointly and severally. As of this time the court

does not grant DM&R's motion for the imposition of disciplinary sanctions and attorney's fees against the plaintiffs' attorney but directs that this motion be set for further hearing after development of a further record relating to the knowledge and involvement of plaintiffs' attorney in earlier proceedings.

## B. MOTION FOR INJUNCTIVE RELIEF

Defendants DM&R and Aetna seek an injunctive order from this court enjoining plaintiffs from filing or causing to be filed any further lawsuits or interposing defenses against them which grow out of the same core of operative facts alleged in plaintiffs now-dismissed complaint. The defendants recognize that this is an extremely harsh remedy, invoked by a court only in the most egregious circumstances.

The court is guided in its decision on defendants' motion by Professor Moore's insightful, instructive words, reprinted at length below because of their intelligence and because of their applicability to the present case.

> The usual procedural method for implementing the res judicata effect of a prior judgment is an appropriate plea or motion in the subsequent proceeding in which an attempt is made to relitigate the matter which is claimed to have been adjudged. Various factors, however, can render this method inadequate to prevent relitigation. At best it normally can terminate relitigation only in another proceeding in which the plea or motion is made; and a party attempting to evade the effect of the initial judgment or to harass his opponent can bring any number of subsequent actions, limited only by his financial resources, stubbornness, and the necessity of repeated service of process on his opponent. The initial litigation may have been long, complex and costly, and the triumphant party can be put to great additional expense by the necessity of litigating a complex issue of res judicata before a tribunal unfamiliar with the record of the previous action. And, finally, the forum in which the plea of res judicata is made may be unfamiliar with the law of the forum that rendered the initial judgment, which is the law that should, under the requirements of full faith and credit, normally control the effect of its judgment as res judicata.

> For these reasons, the practice has developed of enforcing the res judicata effect of a judgment in appropriate situations by the equitable remedy of injunction—a remedy historically available for such purposes as restraining vexatious or harassing litigation, restraining enforcement of inequitable judgments, and protection of previously acquired exclusive in rem or quasi in rem jurisdiction ....

> That a claim asserted in a subsequent proceeding is barred by the res judicata effect of a prior judgment is not of itself grounds for an injunction against the claimant. Vexatious, damaging or harassing potentialities of the proceeding to be enjoined must be established to authorize relief. Bad faith, if any, of the party seeking relitigation, difficulties imposed by a subsequent suit or suits on the party seeking an injunction, in the expense of time, money and energy required to defend, and the effect of continued litigation on his business or reputation, are considered by courts when asked to enjoin relitigation of matters previously adjudged.

> Because an injunction against proceedings in another court is directed to a litigant rather than to the other court, it does not directly assert power over that court. Thus a state court can enjoin relitigation of a matter adjudged by it in another court of coordinate rank in the same state, or in another state. By the same principles, a federal court can protect and effectuate federal judgments by injunction of subsequent proceedings in another federal court. In proper cases, a federal court can similarly effectuate its judgments by enjoining suits in state courts .... (Citations omitted)

1B J. Moore, Federal Practice ¶ 0.408[2]. See also 17 Wright and Miller, Federal Practice and Procedure § 4226.

The court recognizes that a decision to place an injunction on a person's future ability to file or defend a lawsuit is a grave decision, to be made only as a last resort. The court is mindful that the right of access to the courts to redress grievances is one of our nation's most precious guarantees. However, the court is equally aware that in some instances the doctrine of res judicata is not a sufficient deterrent to quell the tide of bad faith, vexatious, and wanton lawsuits.

■ The court finds that on the record before it the doctrine of res judicata has not been and will not be a sufficient deterrent to plaintiffs to prevent them from subjecting defendants to continued harassing, vexatious, bad faith lawsuits. Plaintiffs have repeatedly lost on every legal front thus far and yet they still brought this action to recover for the same claim. The court respects vigorous litigants who prosecute or defend with conviction, intellect, and creativity their legal positions. However, plaintiffs' actions in bringing the present lawsuit represent a perversion of the legal system. Plaintiffs did not file this lawsuit in a good faith effort to recover for wrongs they suffered at the hands of defendants. Plaintiffs' actions were motivated by bad faith. Their actions were vexatious and wanton. Their ill-disguised motives were to try to repay the defendants for the alleged wrongs done to them by defendants.

The court finds that this is the appropriate case to issue an injunction against plaintiffs, enjoining them from bringing any further lawsuits or interposing any defenses which grow out of the facts and allegations made in their complaint. The court is particularly persuaded that this is an appropriate course of action in view of plaintiffs' proceeding forward with this lawsuit despite an earlier finding by Judge Pratt that they appealed in bad faith the bankruptcy judge's dismissal, based on res judicata, of their objections to DM&R's claims against them. Judge Pratt's opinion in relevant part stated:

> [T]he Court can award reasonable attorney's fees incurred as a result of this appeal if it concludes that appellant acted vexatiously, wantonly or in bad faith.
>
> Bad faith has been defined to include acts of "obdurate obstinancy". This court concludes that the appeal by Stegeman of the bankruptcy court's order amounts to obdurate obstinancy.
>
> Stegeman has raised the issues presented here in various forums and the doctrine of *res judicata* was obviously applicable. The appeal required DM&R to litigate recognized legal rights clearly owed.

*Stegeman v. Detroit Mortgage and Realty Co., Inc.,* No. 81–71524 (E.D.Mich. Oct. 4, 1981). In his subsequent opinion and order of December 16, 1981, Judge Pratt assessed John Stegeman $8,424.00 in attorney's fees.

In spite of Judge Pratt's finding of bad faith against plaintiff and his assessing against plaintiff attorney's fees for appealing a lower court's order of dismissal based on the doctrine of res judicata, the plaintiffs have proceeded forward against defendants in the present case. Because of this and because of the court's findings of bad faith, vexatiousness, and wantonness against plaintiffs in bringing this action, the court holds that an injunction against plaintiffs is the only appropriate remedy to prevent plaintiffs from further perverting the justice system and injuring defendants.

Accordingly, the court orders that an injunction shall issue against John C. Stegeman and Lois U. Stegeman, husband and wife, in favor of the defendants DM&R, Aetna, and their agents, enjoining the Stegemans from filing any further lawsuits or prosecuting any further legal actions to recover of the present defendants or their agents for any alleged wrongs done them by defendants in connection with the events leading up to and including the judgments of foreclosure, discussed in this order, obtained by defendants against plaintiffs. This injunction includes a prohibition on plaintiffs from filing any future action against the defendants or their agents which concerns allegations and claims that were brought in this action or which could reasonably be interpreted to arise out of the same common core and nucleus of operative

facts. The injunction also includes any defenses, counterclaims, cross-claims, or third-party claims which fit within the description noted above.

So ordered.