FEDERAL SCREW WORKS, A Michigan
Corporation, Plaintiff,

v.

INTERFACE SYSTEMS, INC., A Delaware Corporation, Defendant.

and

INTERFACE SYSTEMS, INC., A Delaware Corporation, Plaintiff,

v.

FEDERAL SCREW WORKS, A Michigan
Corporation, Defendant.

Civ. A. Nos. 83CV–6021AA, 83CV–6037AA.

United States District Court,
E.D. Michigan, S.D.

Sept. 12, 1983.

Don K. Harness, Christopher M. Brock, John A. Sinclair, Harness, Dickey & Pierce, Birmingham, Mich., for plaintiff Federal Screw Works.

Thomas N. Young, Krass, Young & Schivley, Troy, Mich., for defendant Interface Systems, Inc.

## MEMORANDUM OPINION AND ORDER

JOINER, District Judge.

Federal Screw Works, the plaintiff in this consolidated action, has moved for summary judgment on Counts II and III of the complaint filed by Interface Systems, Inc. For the reasons given below, the motion is granted.

The dispute in this case involves a licensing agreement between the parties. Interface Systems filed an action in Oakland County Circuit Court for breach of contract, unfair competition and for constructive trust to patent title. Thereafter, Federal Screw Works filed an action in this court for a declaratory judgment that it was not infringing the patent owned by Interface, which was the subject of the licensing agreement, and filed a removal petition in the state action. In a Memorandum Opinion and Order dated March 17, 1983, this court denied Interface System's motion to dismiss and motion to remand and consolidated both actions.

Count II of the complaint filed by Interface seeks a ruling that Federal holds three patents in constructive trust for Interface— U.S. Patents No. 4,130,730, No. 4,128,737 and No. 4,215,240—based upon two employee termination agreements.

Interface employed Mark Dorais and Carl Ostrowski who both worked in the field of voice synthesis. Dorais was employed as an engineer for an affiliate of Interface from July of 1971 until July of 1972, when he took employment with Federal. Ostrowski worked for Interface as a technician from August of 1972 until January of 1973, when he also took employment with Federal.

Both employees signed employment agreements when at Interface promising to:

(1) disclose to the Company all inventions of any class hereafter defined which the Employee has made or may hereafter make, (2) make, at the Company's expense, such applications for United States and foreign patents covering said inventions as the Company may request, (3) assign to the Company without further compensation to the Employee the entire title and right to all said inventions and applications, and (4) execute, acknowledge and deliver at the request of the Company all papers, including patent applications, assignments ... necessary to secure to the Company the fullest rights to said inventions. . . .

The inventions which shall come under this Agreement shall include all inventions conceived or developed by the Employee either solely or jointly with others during his employment or thereafter which either (1) are made in the performance of the duties to which he is assigned in the course of his employment or (2) are made with the use of the time, material or facilities of the Company, or (3) relate to any apparatus, method, process, substance, or article of manufacture within the scope of or usable in connection with the Company's field of activity or contemplated field of activity, including the subject matter of any manufacturing, selling, testing, research, or experimental activity.

Federal claims that the two employee agreements, which are the basis for Count II of Interface's complaint, are unlawful and void under Mich.Comp.Laws Ann. § 445.761 which prohibits

[a]ll agreements and contracts by which any person ... promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void.

Federal argues that the agreement in question, if enforced, effectively prohibits an engineer from working because an employer pays an engineer for ideas and skill and under the agreement the fruits of the engineer's labor would belong to Interface. Federal asserts that the statute should be applied so as not to prevent the two employees from obtaining engineering jobs.

There are no Michigan cases directly on point. The Michigan cases cited by Federal which have held agreements invalid under the statute concern agreements which directly prohibit an employee from engaging in a certain business. *E.W. Smith Agency, Inc. v. Sanger,* 350 Mich. 75, 85 N.W.2d 84 (1957); *Wedin v. Atherholt,* 298 Mich. 142, 298 N.W. 483 (1941); *Lyzen v. Lyzen,* 221 Mich. 302, 191 N.W. 6 (1922); *Grand Union Tea Co. v. Lewitsky,* 153 Mich. 244, 116 N.W. 1090 (1908). The present case involves an agreement which is much more indirect.

There are a number of Michigan cases which have held indirect agreements not within the statutory prohibition. In *Good v. Modern Globe, Inc.,* 346 Mich. 602, 78 N.W.2d 199 (1956), the court held that a covenant with a former president which required the president to consult with the employer for a period of five years and prohibited him from working for a competitor during that period did not violate the statute. The rationale was that the agreement was not actually one in restraint of employment but one for employment.

In *Woodward v. Cadillac Overall Supply Co.,* 396 Mich. 379, 240 N.W.2d 710 (1976),

the court held that the statute did not apply to a clause in an employee retirement profitsharing plan which provided for forfeiture of benefits if an employee became associated with a competitor. The court distinguished an agreement which directly prohibited employment with a competitor. *See also Couch v. Administrative Committee of the Difco Laboratories, Inc.,* 44 Mich. App. 44, 205 N.W.2d 24 (1972).

Michigan courts appear to have applied the statute strictly, distinguishing forfeiture provisions from direct prohibitions and applying the statute to the latter but not the former case. *See Saginaw Joint Venture v. Elias Brothers Restaurants, Inc.,* 106 Mich.App. 274, 276–77, 307 N.W.2d 759 (1981).

Interface argues that Michigan would not apply the statute to the present case because the agreement in question actually provides a forfeiture and does not directly prohibit employment.

It is important to note that the Michigan legislature has determined that covenants which restrict employment are against public policy. The cases in which the courts have ruled that the covenant was a forfeiture and not within the statute involved forfeitures that would not prohibit or substantially impair employment if given effect.

The covenant in the present case, while not expressly prohibiting employment, provides a substantial impairment which, if given effect, would completely eliminate an engineer's ability to work for a competitor of his former employer. This result is precisely the kind of restraint which the statute seeks to prohibit. Consequently, the court is persuaded that this particular agreement is void under the statute.

██ It is proper to say at this point that this decision in no way alters an employer's ability to protect trade secrets. Covenants which seek to protect trade secrets do not fall within the prohibition of the statute. *Glucol Manufacturing Co. v. Schulist,* 239 Mich. 70, 214 N.W. 152 (1927). The covenant in the present case says nothing about trade secrets and is not limited to protection of such information. Furthermore,

there is no issue of trade secrets in this action.

The agreement in question is also invalid as an *unreasonable* restraint of trade.

Any bargain or contract which purports to limit in any way the right of either party to work or to do business, whether as to the character of the work or business, its place, the manner in which it shall be done, or the price which shall be demanded for it, may be called a bargain or contract in restraint of trade. It is everywhere agreed that in order to be valid, a promise imposing a restraint in trade or occupation must be reasonable.

*Stoia v. Miskinis,* 298 Mich. 105, 117–18, 298 N.W. 469 (1941) (quoting 5 Williston on Contracts (Rev.Ed.) §§ 1633 and 1636. Where the agreement is not prohibited by the statute it must be reasonable. *Stoia* at 118, 298 N.W. 469; *Hubbard v. Miller,* 27 Mich. 15 (1873). In such a case it is valid if the restraint is limited to a reasonable area for a reasonable length of time. *Nowicki v. Podgorski,* 359 Mich. 18, 101 N.W.2d 371 (1960).

The agreements in question are for an indefinite period of time. One employee worked for Interface for one year and the other for only a few months. It is now ten years later and Interface seeks to enforce termination agreements against these former employees which would require them to turn over all inventions for an indefinite period of time covering subjects both within the Company's field of activity or "contemplated field of activity." It is hard to imagine a more restrictive or overbroad agreement. It would be reasonable to restrict these ex-employees from using information gathered at Interface. It is not reasonable to confiscate all new inventions made by the employees for which Interface might have an interest.

██ Because the employee termination agreements are invalid, they cannot be the basis for imposing a constructive trust as alleged in Count II. It is well settled that invalid agreements are unenforceable. *Continental Wall Paper Co. v. Voight &*

Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486 (1909).

Interface argues that it was Federal that insisted upon the agreements during negotiations for the license and that the employee agreements were part of the broader arrangement between the parties and, therefore, Federal should be estopped from asserting the illegality of the agreements. The Court of Appeals for the Sixth Circuit has addressed this problem in *National Transformer Corp. v. France Manufacturing Co.*, 215 F.2d 343, 361 (1954):

> It may be here emphasized that a contract which cannot be performed without violation of a statute is illegal and void. Where parties are in pari delicto, the law will leave them where it finds them, and all relief is refused because of the public interest... The defendant may assert the invalidity of an agreement, even though he is a participator in the wrong... The defense of illegality is allowed, not as a protection to the defendant, but as a disability to the plaintiff. (Citations omitted)

The employee agreements are the sole basis alleged in Count II for imposing a constructive trust and, therefore, Count II must be dismissed for failure to state a claim.

Count III of Interface's complaint charges unfair competition and restraint of trade based upon Federal's failure to pay Interface royalties on the improvement inventions developed by the employees Dorais and Ostrowski. This Count is also based upon the termination agreements and likewise must be dismissed.

Lastly, Federal asks for costs and attorney fees pursuant to the court's equity powers and cites this court's opinion in *Stegeman v. Detroit Mortgage & Realty Co.*, 541 F.Supp. 1318 (E.D.Mich.1982). The situation in *Stegeman* is clearly not analogous to the present case and the request for costs and fees is denied.

So Ordered.