## OLIVER T. OSBORNE *v.* THE LOCKE STEEL CHAIN COMPANY

KING, C. J., MURPHY, ALCORN, HOUSE and COTTER, Js.

Argued December 7, 1965—decided March 16, 1966

*David Goldstein,* with whom were *Joseph S. Catalano* and, on the brief, *Robert S. Cooper,* for the appellant (plaintiff).

*Morris Tyler,* with whom was *Lawrence W. Iannotti,* for the appellee (defendant).

COTTER, J.  This action was brought by the plaintiff to recover damages for breach of contract, alleged to have been caused by the defendant's refusal to make payments to him under a written agreement entered into between the parties under date of November 4, 1960.

The terms of this agreement provided that the defendant pay the plaintiff $20,000 during the year ending September 30, 1961, and thereafter, $15,000 a year for the remainder of the plaintiff's life. The plaintiff agreed to hold himself available for consultation and advice with the company and its officers and not to engage in or be employed by any business enterprise, directly or indirectly, which is

engaged in any line of business in competition with the company within the states of Connecticut, New York, Pennsylvania, Ohio, Indiana, Illinois, Michigan, California or Washington, or in any of the areas abroad in which the company does business. The defendant made payments in accordance with the terms of the agreement for approximately two and one-half years, following which, after the plaintiff refused to consent to a modification of the agreement, the defendant discontinued further payments. The plaintiff then initiated the present action to recover payments due under the agreement. The defendant, by way of special defenses, alleged that the agreement was invalid and unenforceable, claiming in effect (1) inadequate consideration because the contract was based on past services, (2) it was manifestly unfair to the defendant, (3) it was procured through undue influence, (4) it was a lifetime employment contract not authorized or ratified by the shareholders, and (5) the board of directors had no authority to enter into it. The issues were tried to the court, which concluded that the agreement was legally unenforceable. Judgment was rendered for the defendant, and the plaintiff took the present appeal.

The facts necessary to a disposition of the question involved are undisputed. The plaintiff was employed by the defendant from 1912 until November of 1961, progressively holding the positions of order clerk, traffic manager, salesman, sales manager, president, and chairman of the board. He was president of the company from 1941 to 1958 and a member of the board of directors from 1941 until 1961. From 1958 until his retirement in November, 1961, he served as chairman of the board of directors.

The agreement in suit was approved by the board of directors at a special meeting held on November 4, 1960. The plaintiff attended this meeting in his capacity as chairman of the board but did not vote on the proposed agreement or preside at the meeting. The company's six other directors, who had previously discussed the agreement among themselves on an informal basis, were all in attendance at the meeting and voted unanimously to approve the agreement. None of those voting were under the plaintiff's control or direction, as in *Sarner* v. *Fox Hill, Inc.*, 151 Conn. 437, 440, 199 A.2d 6. The plaintiff took no part in the consideration of the terms of the agreement, either prior to or during this meeting, and was unaware of the existence of the proposed agreement prior to the meeting. After its approval by the board, the agreement was signed by the plaintiff and by the company acting through its president. Regular payments were made to the plaintiff until April, 1963, at which time the company repudiated the agreement and discontinued payments.

The trial court concluded that there was no consideration for the agreement on the part of the plaintiff and that the directors did not have authority to enter into the agreement. In addition, although the finding is not specific on this point, the court has included facts in some paragraphs of the finding which might be taken to indicate that it favored the special defense that the contract was manifestly unfair to the defendant. These three points will be discussed separately.

I

We first pass to the question of consideration. The doctrine of consideration is of course funda-

mental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable. In defining the elements of the rule, we have stated that consideration consists of "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." *Finlay* v. *Swirsky,* 103 Conn. 624, 631, 131 A. 420; *Barnum* v. *Barnum,* 8 Conn. 469, 471. An exchange of promises is sufficient consideration to support a contract. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 342, 150 A.2d 597; *Kay Petroleum Corporation* v. *Piergrossi,* 137 Conn. 620, 622, 79 A.2d 829.

The recited consideration in the present case consists of the plaintiff's promise to hold himself available for consultation with the defendant in connection with the defendant's business and to avoid serving any enterprise in competition with the defendant within a designated area. In essence, what the defendant bargained for, as contained in the terms of the written agreement, was the exclusive right to the plaintiff's knowledge and experience in his chosen field for the remainder of his life.

Absent other infirmities, "bargains . . . moved upon calculated considerations, and, whether provident or improvident, are entitled nevertheless to the sanctions of the law." *United States* v. *United Shoe Machinery Co.,* 247 U.S. 32, 66, 38 S. Ct. 473, 62 L. Ed. 968. The defendant cannot now be heard to claim, for its own benefit, that the actual undertaking of the parties was other than that which appears in their written agreement. *Lakitsch* v. *Brand,* 99 Conn. 388, 393, 121 A. 865. Even though it might prefer to have the court decide the plain effect of this agreement to be contrary to the expressed intention set forth in the contract between

the parties, it is not within the power of the court to make a new or different contract. *New Orleans v. New Orleans Water Works Co.,* 142 U.S. 79, 91, 12 S. Ct. 142, 35 L. Ed. 943; *Sand Filtration Corporation v. Cowardin,* 213 U.S. 360, 364, 29 S. Ct. 509, 53 L. Ed. 833; 17 Am. Jur. 2d 627, Contracts, § 242; 4 Williston, Contracts (3d Ed.) § 610. The plain implication of the contract must be followed in accordance with the intention of the parties. *Sturtevant v. Sturtevant,* 146 Conn. 644, 647, 648, 153 A.2d 828; *Molyneux v. Twin Falls Canal Co.,* 54 Idaho 619, 626, 35 P.2d 651.

Under the facts of this case, the recited consideration constituted a benefit to the defendant, as well as a detriment to the plaintiff, and was therefore sufficient consideration under the general rule set out in *Finlay v. Swirsky,* supra. An exclusive right to the counseling of the plaintiff, who had had almost fifty years of experience in the defendant's business, including some twenty years in positions of ultimate responsibility, and whose capacities are unchallenged, cannot reasonably be held to be valueless. Exactly what value might be placed on such a right is of course irrelevant to this issue. The doctrine of consideration does not require or imply an equal exchange between the contracting parties. "That which is bargained-for by the promisor and given in exchange for the promise by the promisee is not made insufficient as a consideration by the fact that its value in the market is not equal to that which is promised. Consideration in fact bargained for is not required to be adequate in the sense of equality in value." 1 Corbin, Contracts § 127; see *Clark v. Sigourney,* 17 Conn. 511, 517. The general rule is that, in the absence of fraud or other unconscionable circumstances, a contract will

not be rendered unenforceable at the behest of one of the contracting parties merely because of an inadequacy of consideration. 1 Williston, Contracts (3d Ed.) § 115; 17 Am. Jur. 2d, Contracts, § 102. The courts do not unmake bargains unwisely made.[1] The contractual obligation of the defendant in the present case, whether wise or unwise, was supported by consideration, in the form of the plaintiff's promises to give advice and not to compete with the defendant, and that obligation cannot now be avoided on this ground.

One additional aspect of the issue of consideration needs discussion. The defendant has claimed that the agreement was motivated by a desire to compensate the plaintiff during his retirement years for his past services to the company. Judging from certain language in the preamble to the agreement referring to the company's custom of paying pensions to its retired personnel, this was undoubtedly true in part. The general rule is that past services will not constitute a sufficient consideration for an executory promise of compensation for those services. *Moore* v. *Keystone Macaroni Mfg. Co.,* 370 Pa. 172, 177, 87 A.2d 295; see 1A Corbin, Contracts § 235. It is well established, however, that if two considerations are given for a promise, only one of which is legally sufficient, the promise is nonetheless enforceable. 1 Corbin, Contracts § 126; 1 Williston, Contracts (3d Ed.) § 134. Since the agreement contained promises by the plaintiff which we have held to constitute sufficient consideration, the fact

---

[1] The defendant apparently thought that its agreement was an unwise bargain, but a bargain nevertheless, for its president wrote the plaintiff in April, 1963, suggesting that the annual payments be reduced to $7500 and stipulating that "[a]ll other conditions will remain the same."

that there was additional consideration, not legally sufficient to support the agreement, cannot excuse the defendant from performance.

## II

The special defense that the contract was manifestly unfair to the corporation uses the words contained in General Statutes § 33-323, having to do with corporate transactions with directors and others. This section of the Stock Corporation Act became effective on January 1, 1961, after the date of this agreement, and is therefore inapplicable to this case. While this section is specifically referred to by both parties in their briefs, the only relevant rule is that contained in *Massoth* v. *Central Bus Corporation,* 104 Conn. 683, 689, 134 A. 236, and similar cases, to the effect that a director of a corporation has the burden of showing that any personal dealing with the corporation is fair, in good faith and for adequate consideration. Under this rule an interested party may show that the contract is voidable. *Sisk* v. *Jordan Co.,* 94 Conn. 384, 389, 109 A. 181, 519. The trial court did not specifically find or conclude that the contract was manifestly unfair, as claimed in the special defense, but its reference in the memorandum of decision to the cases cited above suggests reliance on the common-law rule, which is pointless unless applied to the particular case tried.

It is true, as the defendant claims, that the dealings of a director with the corporation are subjected to rigorous scrutiny and must be shown to be in good faith and contain inherent fairness to the corporation. "The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain."

*Pepper* v. *Litton,* 308 U.S. 295, 306, 60 S. Ct. 238, 84 L. Ed. 281; see *Ransome Concrete Machinery Co.* v. *Moody,* 282 Fed. 29, 34 (2d Cir.); *Klopot* v. *Northrup,* 131 Conn. 14, 20, 37 A.2d 700; *Sisk* v. *Jordan Co.,* supra, 389, 390; *Rocky Mountain Powder Co.* v. *Hamlin,* 73 Nev. 87, 91, 310 P.2d 404; 3 Fletcher, Corporations (Perm. Ed. Rev.) § 913, p. 358. The consideration passing from the director to the corporation must adequately compensate the corporation for the benefits received by the director under the agreement. *Klopot* v. *Northrup,* supra, 20; *Massoth* v. *Central Bus Corporation,* supra, 689.

While it was found by the trial court that some of the directors were longtime friends of the plaintiff, that he had hired one director in 1937 who later became president of the company when the plaintiff retired, and that the directors had had a long intimate business association with the plaintiff, nowhere in the finding did the trial court find or conclude that the transaction was the result of bad faith, dishonesty or unfairness. From a review of the subordinate facts, it is clear that the plaintiff's experience was a potentially valuable asset to the defendant, or to any other company engaged in a similar business, and that the annual payments to be made to the plaintiff were in a reasonable amount. The burden of showing that the agreement was fair was thus met by the plaintiff. There was no evidence that the agreement was a product of collusion between the plaintiff and the other members of the board or that it was anything other than an arm's length transaction initiated by, and in the best interests of, the corporation. The claim that the agreement was unfair or lacking in adequate consideration cannot therefore be supported by the facts as found.

## III

The trial court concluded that the defendant's board of directors did not have authority to enter into the agreement in question. Under chapter 590 of the General Statutes, in effect at the time this agreement was adopted, the management of a corporation was vested by statute in its board of directors. General Statutes § 33-46 (repealed, effective January 1, 1961, by Public Acts 1959, No. 618, § 137);[2] *Greenberg* v. *Harrison,* 143 Conn. 519, 523, 124 A.2d 216. The bylaws of the defendant corporation, consistent with § 33-46, state that the property and affairs of the corporation shall be managed by its board of directors. See General Statutes § 33-16 (repealed, effective January 1, 1961, by Public Acts 1959, No. 618, § 137). "It is fundamental to the concept of a corporation that its affairs are to be controlled by a board of directors elected by a majority of the shareholders." *Krall* v. *Krall,* 141 Conn. 325, 334, 106 A.2d 165; see *Greenberg* v. *Harrison,* supra; 19 Am. Jur. 2d 575, Corporations, § 1145; cf. *Taft Realty Corporation* v. *Yorkhaven Enterprises, Inc.,* 146 Conn. 338, 341, 342, 150 A.2d 597. As a general proposition, therefore, the directors had authority to enter into agreements on behalf of the corporation. See 6 Fletcher, Corporations (Perm. Ed. Rev.) § 2564. Unless some specific infirmity can be shown in regard to the directors' adoption of the agreement in question, the validity of that agreement must be presumed.

---

[2] General Statutes § 33-46 provided: "The property and affairs of each corporation shall be managed by three or more directors. . . ." General Statutes § 33-313, which became effective on January 1, 1961, states: "(a) Subject to any provisions pertaining thereto contained in the certificate of incorporation, the business, property and affairs of a corporation shall be managed by its board of directors."

The trial court, in its finding and its memorandum of decision, refers to several alternative grounds for holding that this particular agreement was beyond the powers of the board of directors. Two of these grounds are concerned with the substance of the agreement and two involve questions of proper corporate procedures.

The first of the substantive grounds consists of the conclusion that the directors had no authority to make a gratuitous award to the plaintiff. Since we have already determined that there was sufficient consideration as a matter of law to support the agreement, its characterization by the trial court as a gratuity cannot be sustained. Therefore, without otherwise considering the merits of this argument, we hold that the agreement is not invalid on the ground that it constituted a gratuitous award beyond the powers of the board of directors.

The second question involving the substance of the contract is whether or not the directors had authority to enter into an agreement providing for lifetime payments to the plaintiff. There is some authority for the proposition that directors have no power to hire an employee on a lifetime basis. 2 Fletcher, Corporations (Perm. Ed. Rev.) § 514, p. 571, and cases cited. Such cases are generally based on the theory that a board of directors, in selecting the management personnel of the corporation, should not be allowed to hamstring future boards in the overall supervision of the enterprise and the implementation of changing corporate policy. In the present case, however, the agreement between the parties did not contemplate that the plaintiff would undertake specific managerial duties. On the contrary, it contemplated the plaintiff's retirement from active employment with the defend-

ant, in conjunction with a continuing relationship between the parties, on an independent contractor basis, under which the plaintiff would be obligated to give advice to, and not to compete with, his former employer. Agreements of this kind, if otherwise valid, are generally held a proper exercise of corporate powers.[3] *Stover* v. *The Gamewell Fire Alarm Telegraph Co.,* 164 App. Div. 155, 159, 149 N.Y.S. 650; *Rosen* v. *Guaranteed Sanitation, Inc.,* 32 Misc. 2d 698, 701, 225 N.Y.S.2d 382; see *Good* v. *Modern Globe, Inc.,* 346 Mich. 602, 610, 78 N.W.2d 199; 5 Williston, Contracts (Rev. Ed.) § 1652, p. 4648. The present case must be distinguished from the situation where the individual becomes an officer or an employee under the contract. The problems presented by such a situation are quite different from those raised by the agreement under consideration. See, e.g., *Baltimore & O.R. Co.* v. *Foar,* 84 F.2d 67 (7th Cir.); *Heaman* v. *E. N. Rowell Co.,* 261 N.Y. 229, 185 N.E. 83; 19 Am. Jur. 2d 458, Corporations, § 982. Here the plaintiff became an independent consultant subject to a restrictive covenant.

Under the facts of this case the contract could not continue for an unreasonable length of time in view of the plaintiff's age—over seventy at the time of its execution and over seventy-four at the time of trial. Lifetime certainly means a limited period of time under these circumstances.

Two matters of corporate procedure remain to be discussed. The first concerns the trial court's finding that the directors were not given formal notice of the November 4, 1960, meeting. All of the

[3] If the agreement is a sham, however, or wholly lacking in consideration, or otherwise unconscionable, it may be set aside by the courts. *Beers* v. *New York Life Ins. Co.,* 66 Hun 75, 20 N.Y.S. 788.

directors attended this meeting, and none of them objected to a lack of notice. Under these circumstances, there can be no reasonable basis for holding that the business transacted at the meeting was invalid. 2 Fletcher, Corporations (Perm. Ed. Rev.) § 411; 19 Am. Jur. 2d 567, Corporations, § 1135; see General Statutes § 33-308 (effective January 1, 1961). The second raises the question whether or not the directors were required to obtain authorization from the shareholders to enter into this agreement. No statutory provision required the directors to submit this agreement to the shareholders, nor has any such provision in the certificate of incorporation or in the bylaws been called to our attention. Without a specific legal requirement that the directors obtain shareholder approval of a contract, the adoption of the contract falls within the general managerial powers of the directors or the duly authorized officers of the corporation. The agreement in suit is not invalid for want of shareholder approval.

On review of the issues presented, therefore, we hold that the agreement was supported by consideration, was fair to the defendant and was a proper exercise of corporate powers by the board of directors.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff in accordance with this opinion.

In this opinion the other judges concurred.