[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this three count complaint, the plaintiff seeks to recover the value of defective ball bearings. Two of the counts are under the corporation statutes, while the third count addresses common law fiduciary obligations.
On or about January 15, 1988, the plaintiff purchased steel balls from the defendant. The defendant was, at the time, a one man corporation. The steel balls turned out to be defective. CT Page 8081
On February 7, 1989, the General Counsel of the plaintiff wrote a letter to the defendant, demanding payment. He noted several letters on the matter, and fixed one week for a response. The defendant did not recall receiving the letters. The plaintiff obtained a default judgment in Michigan on December 18, 1989 for the sum of $39,151.83. On July 6, 1990, the plaintiff obtained a default judgment in the Superior Court for the aforesaid sum, and interest of $1,882.69 and costs of $2,000.00. A property execution was returned unsatisfied, and a bank execution was returned unsatisfied. On April 30, 1991, a set of post-judgment was sent to the defendant, and was returned unsatisfied on May 10, 1991.
Meanwhile, the defendant put the entire machinery up for liquidation sale on September 11, 1989. The receipts of the auction were $398,759.75. The checkbook balance after all the charges was $832.94 on October 27, 1989. Listed on the charges was $25,003.00 for rent to the defendant for the month of August, September and October 1989.
The defendant produced a lease of 956 Old Colony Road, Meriden, Connecticut. Said lease carried a monthly payment of $4,245.00, and the lease was to run to August 31, 1989. There was an option, but no evidence that the option was ever exercised.
A sheet from the defendant from the accountants shows the figures for rent paid to be:
 1986 $15,000 1987 — 0 — 1988 — 0 — 1989 41,670
The lease has no waiver clause. Adam v. Consolini, 135 Conn. 321,325 (1949).
The lease was drawn so that the landlord, the plaintiff, leased the premises at 956 Old Colony Road, in Meriden to the corporation. He signed for the corporation as the president.
 "It is fundamental to the concept of a corporation that its affairs are to be controlled by a board of directors elected by a majority of the shareholders. (citations omitted). As a general proposition, CT Page 8082 therefore, the directors had authority to enter into agreements on behalf of the corporation."
Osborne v. Locke Steel Chain Co., 153 Conn. 527, 536 (1966).
Section 33-323 of the General Statutes sets forth the criteria for qualifying a contract or transaction between a corporation and a director of the corporation. Since both the lessor and the lessee carry the same signature, this is clearly a case of self-dealing.
 "At common law, such transactions were voidable by the corporation as self-dealing. (citations omitted). Section 33-323 provides a safe harbor for certain of these transactions by eliminating voidability for self-dealing transactions that meet certain requirements. These requirements include approval of the contract or transaction by shareholders or disinterested directors, or fairness to the corporation . . . If a plaintiff can demonstrate that a transaction is self-dealing, the burden shifts to the defendant officer or director wishing to take advantage of the safe harbor provisions of 33-323 to demonstrate that the self-dealing transaction was complete in accordance with its provisions."
Rosenfield v. Metals Selling Corp. , 229 Conn. 771, 797 (1994).
The record reveals nothing about the fairness of the rental, leaving the conclusion that the defendant has not met the burden of showing the fairness to the corporation.
 "At common law, transactions by the corporation with an officer or with members of his immediate family were self-dealing. Those transactions were voidable by the corporation under certain circumstances." Id.
 "Pursuant to General Statutes 33-323 and the cases, self-dealing transactions are voidable unless the self-dealing director sustains the CT Page 8083 burden of showing that the self-dealing was fair, in good faith and for adequate consideration. Hadden v. Krevit, 186 Conn. 587, 590, 442 A.2d 944 (1982)."
Bricklin v. Stengol Corp. , 1 Conn. App. 656, 659, fn. 3 (1984).
 I
In the first count, the plaintiff seeks recovery under § 33-321 of the General Statutes. Although there was no formal vote on the matter, the defendant is deemed to have voted for the liquidation of the corporation property, at least on the date of the auction. The plaintiff was a creditor at least as of February 7, 1989. "Creditor" has the meaning set forth in Ballentine's Law Dictionary (3rd Edition). The amount of $25,003.00 was paid to the defendant as rent. The defendant, as a director, did not conduct himself in good faith.
As noted supra, the defendant was the landlord and the tenant under the lease. Such an arrangement is self-dealing. The defendant is incapable of curing the difficulties under the statute, § 33-323. The vote of the directors and shareholders will not suffice. On the question of fairness no evidence was offered.
The issue of the first special defense to the first count is found for the plaintiff.
 "It is true, . . . that the dealings of a director with the corporation are subjected to rigorous scrutiny and must be shown to be in good faith and contain inherent fairness to the corporation. `The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain.'"
Osborne v. Locke Steel Chain Co., 153 Conn. 527, 534 (1966).
 "A director has the burden of showing that any personal dealing between him and his corporation is consistent with good faith, fairness, and is for adequate consideration."
Ferris v. Polycast Technology Corporation, 180 Conn. 199, 208
CT Page 8084 (1980).
 "The defendant, in making his claim, is forced to, and does, ignore or by-pass the corporate entity. This he cannot do, in view of § 53-355. The property of the corporation was not his, regardless of who owned the corporate stock. (citations omitted). The corporation was an entity, separate and apart from its stockholders."
State v. Harris, 147 Conn. 589, 593 (1960).
 "The defendant chose to, and did, organize the two corporations, and he conducted his affairs through them, thereby enjoying the benefits and protection of corporate operation of his business. He cannot now, when it suits his purpose, brush aside the corporate entity and claim that the corporate funds are his own private funds to do with as he pleases."
State v. Harris, supra 593.
The withdrawal of funds for the purpose of paying himself rent constitutes a conversion of corporate funds. The defendant is hereby directed to forward to the corporation the sum of $25,003.00, to be held for the payment of the debt.
 II
As to the second count, the plaintiff claimed a breach of fiduciary duty as a director in that he distributed to himself when he knew that funds were insufficient to satisfy creditors.
 "When directors have paid to themselves sums of money to which they have no right to claims, a court of equity has jurisdiction of a suit to charge them as trustees."
18B Am.Jur.2d 1899, Corporations.
In Joy v. North, 692 F.2d 880 (1982), the court was considering the business judgment rule. It did not consider the cases, such as Globe Woolen Corp. v. Utica Gas Electric Co., CT Page 8085224 N.Y. 483, 121 N.E. 378 (1918) in which a director is tainted with a conflict of interest. Therein, the court (Cardozo, J.) annulled the contract between the two parties for a conflict of interest, with the same person on both sides of the table.
The situation is similar to the instant lease. Mr. Cavallo, as both lessee and lessor, may manipulate the flow of dollars into the lessor he sees fit.
Therein, the same person was the chief stockholder, the president, and director of the plaintiff. He was also a member of the board of directors of the defendant, and chairman of the executive committee. The contract between the parties was passed by the executive committee of the defendant while he was chairing the meeting, but he declined to vote on the issue. The defendant later sued to rescind the contract.
 "But the argument is that by refusing to vote he shifted the responsibility to his associates, and may reap a profit from their errors. One does not divest oneself so readily of one's duties as trustee. The refusal to vote has, indeed, this importance: It gives to the transaction the form and presumption of propriety, and requires one who would invalidate it to probe beneath the surface. (Citations omitted.) But `the great rule of law' (Citations omitted) which holds a trustee to the duty of constant and unqualified fidelity is not a thing of forms and phrases. A dominating influence may be exerted in other ways than by a vote."
 "The trustee is free to stand aloof, while others act, if all is equitable and fair. He cannot rid himself of the duty to warn and to denounce, if there is improvidence or oppression, either apparent on the surface, or lurking beneath the surface, but visible to his practiced eye." (Citations omitted.)
 "There was an influence here, dominating, perhaps, and surely potent and persuasive, which was exerted by Mr. Maynard from the beginning to the end. In all the stages of CT Page 8086 preliminary treaty he dealt with a subordinate, who looked up to him as a superior, and was alert to serve his pleasure. There was no clean-cut cleavage in those stages between his conflicting offices and agencies. (Citations omitted). No label identified the request of Mr. Maynard, the plaintiff's president, as something separate from the advice of Mr. Maynard, the defendant's chairman. Superior and subordinate together framed a contract, and together closed it. It came before the executive committee as an accomplished fact. The letters had been signed and delivered. Work has been begun. All that remained was a ratification, which may have been needless, and which, even if needful, took the aspect of a mere formality." . . . "Faith in his loyalty disarmed suspicion."
 "There was then, a relation of trust reposed, of influence exerted, of superior knowledge on the one side and legitimate dependence on the other. (Citations omitted.) At least, a finding that there was this relation has evidence to sustain it. A trustee may not cling to contracts thus won, unless their terms are fair and just. (Citations omitted.) There was inequality, therefore, both in knowledge and in the opportunity for knowledge. It is not important in such circumstances whether the trustee foresaw the precise evils that developed. The inference that he did might not be unsupported by the evidence. But the indefinite possibilities of hardship, the opportunity in changing circumstances to wrest unlooked-for profits and impose unlooked-for losses, these must have been foreseen. Foreseen or not, they were there, and their presence permeates the contracts with oppression and inequity."
 "We hold, therefore, that the refusal to vote does not nullify as of course an influence and predominance exerted without a vote. We hold CT Page 8087 that the constant duty rests on a trustee to seek no harsh advantage to the detriment of his trust, but rather to protest and renounce if through the blindness of those who treat with him he gains what is unfair. And, because there is evidence that in the making of these contracts that duty was ignored, the power of equity was fittingly exercised to bring them to an end."
Globe Woolen Corp. , 377-321.
 "Although not strictly speaking trustees, officers and directors are fiduciaries with respect to the corporation and its shareholders. (Citations omitted.) When the corporation is insolvent these duties run to creditors. (Citations omitted.)
 "The fiduciary duty comprises two prongs: a duty of care, and a duty of loyalty. (Citations omitted.) While the duty of care requires that the corporate fiduciaries exercise their best care and judgment in the management of the corporation, the duty of loyalty derives from the prohibition against self-dealing that inheres in the fiduciary relationship. The fiduciary is not to benefit at the expense of the corporation and those interested therein; he may not use his power for his personal advantage to the detriment of the corporation and its creditors, `no matter how meticulous he is to satisfy technical requirements.' . . . Although fiduciaries are not strictly forbidden to engage in `interested' transactions with the corporation, such transactions must be `inherently fair' and must `carr[y] the earmarks of an arm's length bargain.'"
In Re Western World Funding Co. Inc., 52 Bankruptcy Reporter, 762, 763.
 "The director's obligation consists of the duty of care and the duty of loyalty. CT Page 8088 (Citations omitted.) The duty of care requires the director to exercise the care that a reasonably prudent person in a similar position would use under similar circumstances. The duty of loyalty requires the director to act in good faith and, where he is shown to have a self-interest in a transaction, the burden shift to him to demonstrate that the transaction is fair and serves the best interests of the corporation and its shareholders . . ."
Horwitz v. South West Forest Industries, Inc., 604 F. Sup. 1130,1134 (1985).
 "A board member's obligation to a corporation and its shareholders has two prongs, generally characterized as the duty of care and the duty of loyalty. The duty of care refers to the responsibility of a corporate fiduciary to exercise, in the performance of his tasks, the care that a reasonably prudent person in a similar position would use under similar circumstances." (Citations omitted.)
. . .
 "The second restriction traditionally imposed, the duty of loyalty, derives from the prohibition against self-dealing that inheres in the fiduciary relationship. (Citations omitted.) Once a prima facie showing is made that directors have a self-interest in a particular corporate transaction, the burden shifts to them to demonstrate that the transaction is fair and serves the best interests of the corporation and its shareholders."
Norlin Corp. v. Rooney, Pace, Inc., 744 F.2d 255, 254 (1989).
 "An officer and director occupies a fiduciary relationship to the corporation and its stockholders. (Citations omitted.) He occupies a position of the highest trust and CT Page 8089 therefore he is bound to use the utmost good faith and fair dealing in all his relationships with the corporation."
Katz Corporation v. T.H. Canty Co., 168 Conn. 201, 207 (1975).
The defendant has filed the first special defense to the second count, alleging the actions were taken after on advice of counsel, pursuant to § 33-313.
The defense is insufficient, based on three grounds.
1. The counsel was not in court at the time of trial.Secondino v. New Haven Gas Co., 147 Conn. 672, 675.
2. Full and frank communication between lawyer and client was essential. "The lawyer-client primarily rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." Trammel v. United States, 445 U.S. 40, 51
(1979).
3. If the full statement of facts were made known to the attorney, his attorney would have warranted in a finding that the lease was self-dealing. Madden v. Mercantile-Safe Deposit TrustCo., 27 Md. App. 17, 339 A.2d 340, 350.
The court finds the issue on the first special defense to the second count for the plaintiff.
The lease is declared null and void. The full amount of the account, namely $56,670.00 is ordered paid over to the corporation, to be held for satisfaction of claims.
 III
The third count of the complaint[1] claims a violation of Section 33-359, in that a shareholder has received a distribution of assets from the corporation, knowing it to be improper. The qualification of the creditor is the same as in Section 33-321.
Payment under the lease seems spotty. In the two calendar years preceding the year of dissolution, no payments were paid to the lessee. The lease contained no waiver claim. The lease was a sham. CT Page 8090
The defendant is directed hereby to forward to the corporation the sum of $25,003.00. to be held for payment of the debt.
The court finds the defendant is indebted to the plaintiff in the sum of $41,234.52 with interest from July 15, 1990.
Robert P. Burns, Judge