[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MOTION TO COMPEL ARBITRATION AND FOR STAY OF JUDICIAL PROCEEDINGS
This is a case of first impression in Connecticut. The plaintiff, Jeffrey Gibbs ("Gibbs"), filed an eight count complaint in the Hartford Superior Court General Life Insurance Company ("CGLIC"), a subsidiary of CIGNA, and one of its vice presidents, Westly Thompson ("Thompson"). In counts two trough five, Gibbs claims that the defendants discriminated against him on the basis of his age and disability, and retaliated against him violation of the Connecticut Fair Employment Practices Act, General Statutes § 46a-60 (a)(1) and (4), and the Americans With Disabilities Act, 42 U.S.C. § 12101 et seq. In counts one and six through eight, Gibbs alleges breach of contract, violation of the implied covenant of good faith and fair dealing, tortious interferences with his business relationship negligent infliction of emotional distress.
Gibbs, who began working for CGLIC in 1969, and became a Regional Vice President in its Individual Insurance Division in January of 1994, makes the following allegations in count one of his complaint. In 1991, he began experiencing migraines, ¶ 12, which became so severe that in 1993 hospitalization was required. ¶ 15. Throughout 1994 and 1995, the defendant, Thompson, made disparaging comments to him regarding his age, disability and ability to perform. ¶ 20. After making several complaints to management about Thompson, Thompson retaliated against him by giving him a written "Performance Letter." ¶ 24. This reprimand caused Gibbs to suffer further physical and emotional harm such as severe migraines and depression. Id. As a result of these events, Gibbs has been disabled from work since approximately October 18, 1995. ¶ 25.
During the week of August 1, 1995, the Individual Insurance Division in which Gibbs worked, distributed an interoffice memorandum regarding a new arbitration policy. (Murray Affidavit, ¶¶ 4 and 5, Defendants' Exhibit II.) The new arbitration CT Page 2897 policy provided in pertinent part: "In the interest of fairly and quickly resolving employment-related disagreements and problems, CIGNA Individual Insurance Division's policy is that mediation/arbitration by a neutral third-party is the required and final means for the resolution of any serious disagreements and problems not resolved by the internal dispute resolution process. Both the Division and the employee will be bound by any mutually agreeable resolution arrived as a result of mediation or by any decision made by an arbitrator. Any agreed upon resolution or arbitrator's decision will be enforceable in court, but the mediation/arbitration must be used before going to court." (CIGNA's Arbitration Policy, Defendants' Exhibit C.)
Presently before the court is the defendants' motion to compel arbitration and to stay judicial proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. In their memorandum, the defendants contend that Gibbs' claims are subject to compulsory arbitration under the FAA.
Also before the court is Gibbs' motion in opposition to defendants' motion to compel arbitration and to stay proceedings. In his memorandum, Gibbs argues that no agreement to arbitrate exists, and thus, the defendants' motion must be denied.
"The FAA, 9 U.S.C. § 1-14, reflects a liberal federal policy favoring arbitration agreements as a means of settling disputes . . . ." (Internal quotation marks omitted.) Topf v.Warnaco Inc., 942 F. Sup. 762, 765 (D.Conn. 1996). "[T]he FAA does not require parties to arbitrate when they have not agreed to do so . . . It simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." (Citations omitted.) VoltInformation Sciences, Inc. v. Board of Trustees of the LelandStanford Junior University, 489 U.S. 468, 478, 109 S.Ct. 1248,103 L.Ed.2d 488 (1989). "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v.Kaplan, 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985
(1995).
In the present case, Connecticut was the situs of the relevant events in this dispute,[1] and thus, we look to the contract law of this state to determine whether an arbitration agreement exists. Id. Under Connecticut law, "for an enforceable CT Page 2898 contract to exist, the court must find that the parties' minds had truly met . . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make. . . [A]n agreement must be definite and certain as to its terms and requirements." Fortierv. Newington Group, Inc., 30 Conn. App. 505, 510,620 A.2d 1321, cert. denied, 225 Conn. 992, 625 A.2d 823 (1993).
In addition, for a promise to be enforceable against the promisor, the promisee must have given some consideration for the promise Gianetti v. Norwalk Hospital, 211 Conn. 51, 61,557 A.2d 1249 (1989). Consideration has been defined as "a benefit to the party promising, or a loss or detriment to the party to whom the promise is made." Id.; Osborne v. Locke Steel Chain Co.,153 Conn. 527, 531, 218 A.2d 526 (1966).
"[A]ll employer-employee relationships not governed by express contracts involve some type of implied contract of employment. . . . To determine the contents of any particular implied contract of employment, the factual circumstances of the parties' relationship must be examined in light of legal rules governing unilateral contracts. . . . [P]roposed modifications, like the original offers, must be accepted." (Citations omitted; footnote omitted; internal quotation marks omitted.) Torosyan v.Boehringer Ingelheim Pharmaceuticals, Inc., 234 Conn. 1, 13-14,662 A.2d 89 (1995).
Significantly, the Torosyan court held: "When an employer issues an employment manual that substantially interferes with an employee's legitimate expectations about the terms of employment, however, the employee's continued work after notice of those terms cannot be taken as conclusive evidence of the employee's consent to those terms. . . . If we were to accept the defendant's argument to the contrary, an employee whose preexisting contract provided that his or her employment could be terminated only for cause would have no way to insist on those contractual rights. The employee's only choices would be to resign or to continue working, either of which would result in the loss of the very right at issue — that is, the loss of the right to retain employment until terminated for cause. The fact that an employee continues working, therefore, may be relevant to determining whether he or she consented to the new contract, butcannot itself mandate a finding of consent." (Citations omitted; CT Page 2899 emphasis added.) Id., 18-19.
The Seventh Circuit Court of Appeals recently found an arbitration clause, which was unilaterally thrust upon a current employee, unenforceable for lack of consideration. Gibson v.Neighborhood Health Clinics, Inc., 121 F.3d 1126, 1131-32 (7th Cir. 1997). The Gibson court held: "Nor was [the employee's] promise to submit claims to arbitration supported by consideration in the form of [the employer's] promise to hire her or to continue to employ her, or by its reasonable reliance on her promise. An initial offer of employment may constitute consideration for an employee's promise, such as a covenant not to compete . . . However, the employer's] offer of employment to [the employee] was not made in exchange for her promise to arbitrate, for she had already been hired at the time she made the promise. Once again, the element of bargained for exchange is lacking. An employer's specific promise to continue to employ an at-will employee may provide valid consideration for an employee's promise to forgo certain rights. In the present case, however, [the employer] never made a promise to continue [the employee's] employment in exchange for her promise to submit claims to arbitration. That is, it never communicated to her that if she signed the Understanding she could continue to work there, and that if she did not her status would be uncertain. It is true that [the employer] continued to employ her. Yet when an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise . . . We therefore conclude that [the employee's] promise to submit her claims against [the employer] to arbitration did not give rise to an enforceable contract." Id.
In the present case, when the interoffice memorandum regarding the new arbitration policy was distributed, Gibbs had already been working for CGLIC for over twenty-five years. Gibbs, however, was never asked to acknowledge receipt of the policy or to sign anything indicating his assent to its terms. Moreover, he alleges that he didn't even read the memorandum until after he went out on disability.[2] Thus, there was no meeting of the minds regarding the arbitration policy between 2:00 a.m. CGLIC and Gibbs. Fortier v. Newington Group, Inc., supra,30 Conn. App. 510. Nor can Gibbs continued employment after notice of the arbitration policy be taken as conclusive evidence of his consent to its terms. Torosyan v. Boehringer Ingelheim Pharmaceuticals,Inc., supra, 234 Conn. 18-19. CT Page 2900
Further, the agreement to arbitrate is not supported by consideration. "Consideration is defined as bargained for exchange whereby the promisor . . . receives some benefit or the promisee . . . suffers a detriment." Gibson v. NeighborhoodHealth Clinics, Inc., supra, 121 F.3d 1130. See also Osborne v.Locke Steel Chain Co., supra, 153 Conn. 531. The arbitration policy that is the subject of this action did not arise out of any type of negotiations between CGLIC and Gibbs. Rather, it was unilaterally thrust upon Gibbs without his knowledge or consent. Since he became aware of the policy, Gibbs has opposed it and has never assented to its terms.
Moreover, CGLIC has not suffered any detriment. CGLIC never promised to continue Gibbs' employment in exchange for his promise to submit claims to arbitration. When an employer has made no specific promise, the mere fact of continued employment does not constitute consideration for the employee's promise." Gibson v. Neighborhood Health Clinics, Inc., supra, 121 F.3d 132. Additionally, CGLIC implemented the arbitration policy to resolve employment related disputes "with less hassle and at considerably less expense. . . . (CIGNA Human Resources's memorandum of July 25, 1995, issued by Donald M. Levinson, Defendants' Exhibit C.) Thus, the arbitration policy is beneficial rather than detrimental to CGLIC's interests.
There was no benefit to Gibbs that was bargained for in exchange for his alleged promise to arbitrate all disputes. Article first, § 19, of the constitution of Connecticut expressly grants civil litigants the right to a trial by jury. The arbitration policy here, however, limits the remedies available to Gibbs, because it deprives him of a right to a trial by jury for preexisting claims. Thus, the policy is detrimental rather than beneficial to Gibbs' interests.
Because there was no meeting of the minds, and the agreement was not supported by consideration, no agreement to arbitrate was formed under Connecticut law.
Other jurisdictions have enforced arbitration agreements arising under facts and circumstances that are substantially similar to those in the present case. For example, in Durkin v.CIGNA Property Casualty Corp., 942 F. Sup. 481 (D.Kan. 1996), the same arbitration policy that is the subject of this action was found to be a part of the employment relationship. See alsoPorter v. CIGNA, No. 1:96-cv-765-MHS (N.D.Ga. filed March 11, CT Page 2901 1997) (same CIGNA arbitration agreement found to be part of the employment relationship); Toone v. Montgomery, Chancery Court, twentieth judicial district, Davidson County, Part III, Docket No. 96-1109-III (March 11, 1997, Lyle, J.) (same). The Durkin
court ruled that there was a binding agreement to arbitrate, because (1) the language of the policy indicated that a contractual duty was created; (2) the plaintiff had actual notice of the policy; and (3) mutuality of the obligation to arbitrate existed. Durkin v. CIGNA Property Casualty Corp., supra,942 F. Sup. 488. The Durkin court further ruled that the "[p]laintiff's continued employment provided sufficient consideration . . ." Id. The Porter and Toone courts citedDurkin as precedent and followed its holding.
The court finds Durkin to be unpersuasive. The Durkin court wrote, [t]he language of the policy at issue here . . . makes clear that a contractual duty of arbitration or mediation was created. The policy specifically states that it is part of the employment contract." (Internal quotation marks omitted.) Durkinv. CIGNA Proper Casualty Corp., supra, 942 F. Sup. 488. Merely saying something is part of the contract, however, does not make it part or the contract. "[P]roposed modifications, like the original offers, must be accepted." Torosyan v. BoehringerIngelheim Pharmaceuticals Inc., supra, 234 Conn. 14. Thus if the proposed modification was not accepted, mutuality of the obligation to arbitrate would not exist. In addition, "[p]laintiff's continued employment [may have] provided sufficient consideration" in Kansas. The Torosyan court, however, has ruled that in Connecticut, continued employment, even after notice of additional terms, is not sufficient consideration to support a contract or modification to a contract, if the employer does not provide any additional benefit to the employee. Id., 18-19.
Accordingly, the defendants' motion to compel arbitration and to stay judicial proceedings is denied.
HENNESSEY, J.