[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDING OF FACT AND CONCLUSION OF LAW
 I. Introduction
This action arises out of the pre and post employment activities of two former employees of the plaintiff Blum Shapiro. Blum Shapiro is a Connecticut professional corporation providing accounting and business consulting services to businesses and individuals.
Defendants, David C. Searles and Gary H. Houser are, by profession, accountants. Both Searles and Houser accepted employment with the accounting firm of Cole, Frago Cusick, Chessler and Co. Houser began working for Cole Frago on July 31, 1989. Searles began working for Cole Frago on December 20, 1990. The plaintiff has brought a 13 count writ. Counts 1 and 2 allege violation of a restrictive covenant by Searles and Houser respectively. Count 3 alleges unjust enrichment by SH an accounting firm set up by Searles and Houser after they left the employment of Blum Shapiro. Count 4 and 5 allege breach of fiduciary duty by Searles and Houser respectively. Counts 6 and 7 allege breach of duty by post-employment activities by each of the defendants. Count 8 alleges a violation of CUTPA § 42-110(a) et seq. of the Connecticut General Statutes by Searles. Count 9 alleges violation of CUTPA by Houser. Count 10 alleges violation of CUTPA by SH. Counts 11 and 12 allege common law unfair competition, first by Searles and then by Houser. Count 13 alleges common law unfair competition by SH.
 II. Findings of Fact
1. Defendant, David C. Searles and Gary H. Houser are by profession accountants. Both Searles and Houser accepted employment with the accounting firm of Cole Frago. Houser began working for Cole Frago on July 31, 1989. Searles began work on December 20, 1990.
2. Both Searles and Houser executed separate covenants not to CT Page 11419 compete with Cole Frago and/or any successor or assign of Cole Frago. Searles and Houser continued to work for Cole Frago as at-will-employees after executing their non-compete agreements.
3. Ms. Carol Scott, the Blum Shapiro director of human resources, testified that the first time she saw a non-compete agreement was after clearing out Mr. Houser's work after his resignation.
4. Blum Shapiro's accounting of the assets transferred to it shows no allocation of value made to covenants not to compete or to goodwill.
5. Cash journals of Cole Frago show substantial assets returning to Cole Frago and ultimately to Messrs. Cohen, Chessler and Guerriere.
6. At the time of the joining of the two accounting firms, Blum Shapiro did not have covenants not to compete with its own employees.
7. Certain partners of Cole Frago had relatively specific employment agreements with Blum Shapiro. Non Cole Frago partners had only general guarantees and when the Blum Shapiro employees' manual was explained to them there was no discussion of covenants not to compete.
8. On November 1, 1997, Cole Frago combined its operations into Blum Shapiro.
9. On November 1, 1997, Blum Shapiro entered into a letter agreement with Cole Frago Partners to combine the two accounting firms.
10. Prior to executing the letter agreement, Cole Frago was a Connecticut limited liability company and Blum Shapiro was a professional corporation.
11. Pursuant to the letter agreement, Cole Frago's business operations were joined with Blum Shapiro. The plaintiff uses the term "merger" to describe the combination of Cole Frago and Blum Shapiro's accounting practices. It is noted that Connecticut General Statutes § 34-193(b) prohibits limited liability companies from merging with professional corporations. A professional corporation is free to acquire the assets of a limited liability CT Page 11420 company.
12. The members of Cole Frago and Blum Shapiro executed the letter agreement with an understanding that the letter agreement did not address the merger in every detail. This agreement, which appears to be the only agreement signed by the parties, expresses the intent of the parties. The agreement is between Edward G. Chessler, Richard Guerriere and James Cohen in their individual capacities and a corporate entity Blum Shapiro Co., P.C.
13. The intent of the letter is set forth in the opening paragraph where it is written:
 "This letter sets forth our [Blum Shapiro's] understanding related to your [Messrs. Chessler, Cohen and Guerriere's] employment by Blum Shapiro Co., P.C. (the Company) and services related to the transfer of certain client records to the company. The agreement provided in section 3 that the individual partners "have agreed to indemnify and hold [Blum Shapiro] harmless from any and all costs, expenses and/or claims [including reasonable attorneys fees] relating to the rendering of accounting services by the [individual partners] in the firm on behalf of Cole Frago clients prior to November 1, 1997 for which a claim is made. . . ."
14. Searles and Houser continued to work for Blum Shapiro as employees-at-will for over a year's time after the joinder of the operation of the two accounting firms.
15. On November 16, 1998, Searles terminated his employment with Blum Shapiro and on November 17, 1998, Houser terminated his employment with Blum Shapiro.
16. On November 18, 1998, Searles and Houser formed Searles and Houser, LLC ("SH"). SH is a Connecticut limited liability corporation in the business of providing accounting and consulting services of the same kind provided by Blum Shapiro.
17. After terminating their employment with Blum Shapiro, Searles and Houser solicited and/or performed accounting services for a number of Blum Shapiro's clients.
18. The clients solicited or serviced by Searles and Houser CT Page 11421 were Action for Bridgeport Community Development, Joseph Deluca, Dr. Demayo, Diane L. Fountas, M.D., LLC, Griffin Corporation, Harts Market, Dr. Koliani, New Opportunities for Waterbury, Inc., Kathleen Owens, Mary Ann Owens, Michael Owens, Noel Owens, Subway Franchisee Advertising Fund Trust, True Publishing Company.
19. While still employed by Blum Shapiro, the defendants had conversations with Blum Shapiro clients in which the clients were informed that the defendants were leaving Blum Shapiro.
20. On the weekend before departing Blum Shapiro's employment, the defendants accessed information from the Blum Shapiro computer system which was related to their intention to solicit Blum Shapiro clients.
21. The defendants willfully failed to record some hours that they worked notwithstanding a Blum Shapiro directive that all time be recorded.
22. As a result of Mr. Houser's failure to record time, Blum Shapiro was denied the opportunity to bill $49,500.00 for work performed by Mr. Houser.
23. Although the time should have been recorded, the account had been billed to its maximum and it is unlikely that any of the $49,500.00 would have been billed or paid since the NOW billing shows existing "write offs" as of August of $57,000.00.
24. Paragraph 5 of the non-compete agreement also included a liquidated damage clause. If liquidated damages were awarded under that clause they would total $665,738.50.
25. Fees actually received by SH from former Blum Shapiro clients total $100,255.00.
 III. Conclusion of Law
1. Blum Shapiro is not entitled to enforce the covenant not to compete and liquidated damage provision.
2. Under Connecticut law, when a proprietor of a business transfers its business to another entity, restrictive covenants which are necessary to protect the transferred business may be deemed to be assigned to the purchaser. Torrington Creamery vs.Davenport, 126 Conn. 515 (1940). Blum Shapiro did not acquire all CT Page 11422 of the assets of Cole Frago. The two entities did not merge and Blum Shapiro assigned no value to any covenant not to compete nor to goodwill in acquiring certain assets of Cole Frago.
3. The Court concludes that Cole Frago did not intend to assign the covenants not to compete or liquidated damages provision to Blum Shapiro nor did Blum Shapiro expect to receive the covenants or damage provision.
4. The Court concludes that the covenants and damages provision were not assigned.
5. The liquidated damage provision is reasonable. See St.Margaret's-McTernan School, Inc. vs. Thompson, 31 Conn. App. 594
(1993).
6. Because Searles and Houser were at-will-employees there was valid consideration for the signing of the covenant not to compete. For example in Russo Associates, Inc. vs. Cachina, 1995 WL line 4589, the court wrote:
 "When a pre-existing contract of employment is terminable at will, no overt consideration is required to support an otherwise valid covenant not to compete. The law presumes that such a covenant is supported by the employers implied promise to continue the employee's employment . . . or his forbearance in not discharging the employee then and there." Russo Associates, pp. 3 citing Osborn vs. Locke Steele Chain Company, 153 Conn. 527, 531 (1966).
7. In evaluating the reasonableness of a restrictive covenant, a court must consider:
(a) the length of time the restriction operates;
(b) the geographical area covered;
 (c) the fairness of the protection accorded to the employer;
 (d) the extent of the restraint on the employees opportunity to pursue his chosen occupation;
 (e) the extent of interference with public interest. CT Page 11423
Russo Associates, Inc. vs. Cachina, 195 WL 94589, 3 (Conn. supra).
In evaluating the reasonableness of the restrictive covenant, the Court finds the length of time to be reasonable. The geographical area to be reasonable. The extent of the restraint on the employees opportunity to pursue his chosen occupation to be reasonable and the extent of the interference with public interest to be reasonable.
8. In view of the fact that at the time of the acquisition Blum Shapiro had no restrictive covenants with its own employees, the Court questions the reasonableness of the protection accorded to the employer by the restrictive covenant at issue.
9. To establish a CUTPA violation the plaintiff must show that
(a) a person;
 (b) engaged in unfair methods of competition and unfair or deceptive acts or practices;
(c) in the conduct or any trade or commerce.
Conn. Gen. Stat. § 42-110(a) et seq.
10. Under CUTPA the plaintiff is entitled to punitive damages when the evidence establishes that the defendant acted with a "reckless indifference to the rights of others or with an intentional and wanton violation of those rights". Gargano vs.Heyman, 203 Conn. 616, 622 (1987).
11. The courts have recognized that the defendants breach of the fiduciary duty owed to an employer constitutes a reckless indifference to the employers rights. Vigneau vs. StorchEngineers, 1995 WL 767984 (Conn. supra) (awarding punitive damages as well as attorneys fees under CUTPA for partners breach of fiduciary duty owed to partnership. See also Larsen ChelseyRealty Company vs. Larsen, 232 Conn. 480 (1995) (former employees unfair competition by accepting job with competitor and taking action that harmed former employee may constitute violation of CUTPA. CT Page 11424
12. As a result of the defendants failure to bill time, conversations with Blum Shapiro clients both before and after their termination and the solicitation of Blum Shapiro's clients, defendants have acted with reckless indifference in violation of CUTPA and Blum Shapiro is entitled to recover punitive damages and attorneys fees in addition to its actual damages.
 CONCLUSION
Enforcement of covenant not to compete, denied. Liquidated damages for violation of covenant not to compete, denied. Damages for failure to record pre-termination time, $0.00. Damages resulting from defendants tortious conduct, $100,255.00. Punitive damages under CUTPA, $100,000.00. Attorneys fees, to be determined. Total award $200,255.00 plus attorneys fees.
Judgment is rendered against Searles and Houser individually. The Court finds for the defendant, Searles Houser, LLC.
By,
Kevin E. Booth, J.